## Picquet *v.* M'Kay.

To support the action of trover, the plaintiff must prove property and the right of pos-
session in himself, and a conversion by the defendant.,

If the defendant has a lien on the goods for which trover is brought against him, the
action cannot be sustained, unless a tender have been made to the defendant of the
amount of the claim.

If a person have a lien on goods for the price of hauling them to a place of deposit, his
subsequently claiming them as his own, and refusing, on that ground, to deliver them
to the owner, is a waiver of the lien.

If *A.* deposit with *B.* a quantity of grain for safe-keeping, and, at the time of making
the deposit, borrow money and buy goods on credit of *B.*—the law creates no lien
for the debt on the grain, in the absence of any agreement to that effect.

A new trial should not be granted in an action on tort, on the ground that the damages
are excessive, unless they appear at first blush to be outrageous and excessive.

To render a former recovery an estoppel to a subsequent suit, embracing the same mat-
ter in controversy with the first, the judgment must be specially pleaded as an estop-
pel. If it be not so pleaded, and the defendant rely on the general issue, the former
judgment is admissible in evidence, but it is not a conclusive bar to the action: the
jury may still find for the plaintiff, if they think him entitled to recover.

ERROR to the *Jefferson* Circuit Court.—*M'Kay* was the
plaintiff below, and *Picquet* the defendant.

M'KINNEY, J.—This is an action of trover brought to reco-
ver the value of 248½ barrels of corn. Plea, not guilty. Ver-
dict for the plaintiff below for 220 dollars, and judgment. A
motion for a new trial founded upon the following reasons,—
1st, The verdict is contrary to law and evidence, 2d, The da-
mages are excessive, 3d, The record offered in evidence by
defendant was conclusive between the parties, and the verdict

ought to have been for the defendant,—was overruled, and a bill of exceptions taken to the opinion of the Court.  Two errors are assigned: the refusal of the Court to grant a new trial, and the rendition of judgment upon the verdict.

The testimony shows that, about the last of *December*, 1828, *M'Kay* had, at a landing on the *Ohio* river, 248¼ barrels of corn; that it was hauled by *Picquet's* teams to his cribs, and the parties agreed that if it did not spoil, having been under water five or six hours, *Picquet* was to keep it at one dollar per barrel, and if it did spoil, *M'Kay* was to take it away, paying *Picquet* the expense of hauling it from the landing to the cribs, amounting to 17 dollars.  After the deposit of the corn, *M'Kay* received from *Picquet* 60 dollars in cash and 15 dollars in goods.  The terms upon which the money was paid do not appear.  On the 20th of *February* following, *M'Kay* demanded the corn.  *Picquet* refused to deliver it, saying it was his, and on being asked for the price of it, remarked that he would pay for it when he pleased.  It appears, that *Picquet* stated that he did not advance the money on account of the corn, but that a note was taken payable to *C. M. Martin & Co.*, merchants of *Madison*, for the money, and by them endorsed to him; that good corn was worth at the time of the demand one dollar and 25 cents per barrel; that after the demand was made, *Picquet* offered to let *M'Kay* have the corn, on his paying the amount of money and goods advanced and the expense of hauling, or to give him 62½ cents per barrel for it; that the corn was noticed on the day of the demand—a part was frozen, and the balance wet and damaged and daily becoming worse; that neither the money advanced, nor the expense of hauling, had been tendered; that an authenticated copy of a record of a chancery cause, brought by *Picquet* against *M'Kay* in the *Gallatin* Circuit Court, *Kentucky*, was admitted in evidence by the Court, and read to the jury; that the corn, the subject of the suit in *Kentucky*, was the same for which this action was brought; that the chancery suit in *Kentucky* was brought after the institution of this action; and that a part of the corn was sold in *May*, 1829, at 75 cents per barrel, and that one other crib was as good as that which was thus sold.

To sustain this action, it is essential that the plaintiff prove property and the right of possession in himself, and a conver-

sion by the defendant. The property in the corn does not appear to be controverted. It is in *M'Kay.* *Picquet* treated it as such, by the proceeding he instituted in *Kentucky.* But it is said, that *Picquet* had a lien which well justified the refusal to deliver, until the lien was tendered or discharged. If this be correct, *Picquet* was not guilty of the conversion. We will examine this position. Liens are of three kinds: by common law, by express agreement, or by usage. *Picquet* was not a common carrier, he therefore has no lien at common law. His lien to the amount of hauling the corn to the cribs, could only attach by express agreement; no usage being alleged, and none existing. Assuming that the agreement, that *Picquet* should have the corn at one dollar per barrel if it did not spoil, and if it did, that *M'Kay* was to take it away on paying the expense of hauling, created a lien to that extent; yet, it is conceived, that on the demand being made, the lien was waived by *Picquet's* claiming the corn as his own. The relation in which they stood by the agreement, was changed by this claim. It was not the assertion of a right to the amount of an existing lien, but to the property itself. A lien cannot be waived and resumed at pleasure. If a different ground of retention than that of the lien be assumed, the lien ceases to exist. *Boardman* v. *Sill,* 1 Campb. N. P. Cas. 410. If the lien does not exist by virtue of the hauling, is it created by the advance of money and goods? This idea is repelled by the express declaration of *Picquet,* that he did not make the advance of money and goods on account of the corn, but that for the money he had taken *M'Kay's* note to C. M. *Martin* & *Co,,* and that it was endorsed to him by them. This note was payable one day after date, and assuredly establishes a preference to personal liability, rather than to the corn. Had no such declaration, however, been made, and the fact of the money and goods advanced been admitted, yet, in the absence of an agreement that a lien should exist, the law would not have created it. This conclusion, exclusive of the declaration of *Picquet,* is fully sustained by the case of *Levering* v. *Bond's Adm'r.* 2 Harr. & J. R. 300.

It is also alleged that the damages are excessive. New trials should be granted, when the finding of a jury has stamped upon it a palpable disregard of the rights of a party, and the indulgence of a prejudiced rather than a just view of the case. A

Nov. Term, 1831.

PICQUET
v.
M'KAY.

PICQUET
v.
MᶜKAY.

verdict, however, to justify the intervention of a Court, should, in the language of many decisions, on the first blush, appear to be outrageous and excessive. Upon a careful examination of the testimony in this case, we are not struck with such a disproportion between the verdict and the value of the corn, as would warrant us to say that this verdict is excessive. The evidence on this point is somewhat contradictory. The plaintiff in error offered, in *February*, to give 62½ cents per barrel for the corn. At that time good corn was worth one dollar and 25 cents per barrel. In *May*, one crib of the corn was sold at 75 cents per barrel, and one other crib was as good as that which was thus sold. The jury may have correctly presumed, that the preservative care of the owner applied to the corn in *February*, would have secured an average price equalling that which it gave.

It is also contended, that the decree rendered in the chancery cause in *Kentucky*, is conclusive in this suit, as the subject-matter of each is the same. The position is unquestionably correct, that the judgment of a Court of competent jurisdiction is conclusive between the parties, the same matter being in controversy. To give it, however, this conclusive effect, it should be pleaded as an estoppel. *Outram* v. *Morewood*, 3 East, 346. In the case of *Vooght* v. *Winch*, 2 Barnew. & Ald. 662, the Court of King's Bench, upon a review of the cases upon the subject of estoppels, decided, that if the estoppel is not relied upon, but issue is taken on the fact, the jury will not be bound by the estoppel. The same doctrine is found in 1 Stark. on Ev. 205. The defendant has relied upon the general issue. The record with other testimony is given to the jury; they weigh it, and if they think, notwithstanding the decree, that the case is with the plaintiff, they can find accordingly. *Church* v. *Leavenworth*, 4 Day, 274.—*Canaan* v. *G. W. Turnpike*, 1 Conn. 1.

We are therefore of opinion, that the Circuit Court acted correctly in refusing a new trial.

STEVENS, J., having been of counsel in the cause, was absent.

*Per Curiam.*—The judgment is affirmed, with 3 *per cent.* damages and costs.

*Howk* and *Smith*, for the plaintiff.
*Sullivan*, for the defendant.