[No. 20851. Department One. November 2, 1927.]

CONTRACTORS MACHINERY AND STORAGE COMPANY *et al.*,
*Respondents,* v. J. J. GUEGUEN, *Appellant.*[1]

[1] CARRIERS (45)—LIEN FOR CHARGES—WAIVER. A lien for charges
for hauling a donkey engine is waived and lost when the carrier
made delivery, and is not re-instated by subsequent possession,
when delivered to the carrier to be returned.

[2] SAME (47)—CHARGES—CONTRACTS—PAYMENT. The evidence sus-
tains findings that thirty dollars was in full for the transporta-
tion of a donkey engine, when that was the amount previously
charged for the same service, no specific new contract was made,
and a witness testified that such sum was agreed upon at the
time of the first service.

[3] LIENS (6)—ON CHATTELS—ENFORCEMENT—DEFENSES—EXCESSIVE
CLAIM. A court of equity will refuse to enforce a lien on a
chattel for the sum of four dollars, where non-lienable items in
an excessive amount were included in the demand, and no op-
portunity given to avoid litigation by the payment of the four
dollars in dispute.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered February 21, 1927,
upon findings in favor of the plaintiff, in an action for
an injunction, tried to the court. Affirmed.

*Harry Hazel,* for appellant.
*Morris & Dubuar,* for respondents.

¹Reported in 260 Pac. 669.

TOLMAN, J.—The appellant, being engaged as a common carrier of freight by automobile trucks between Seattle and points in Kitsap county, was employed by one McDowell, in November, 1925, to transport certain freight to a point in Kitsap county, where McDowell was engaged in contract work. The freight was transported and delivered to McDowell, and a bill was rendered for the service, which has never been paid.

One of the items charged in the bill was thirty dollars for the transportation of a donkey engine from respondent's place of business in Seattle to McDowell's camp in Kitsap county, which engine, it appears, at all times was owned by the respondent, but had been by it leased to McDowell on an oral lease for sixty dollars per month, the engine to be taken from respondent's place of business and returned thereto by McDowell at his own expense, and the rental to accrue from the time of the taking to the time of the return of the engine. Appellant made no inquiry as to the ownership of the engine, and was not informed by anyone as to the nature or terms of the agreement between respondent and McDowell.

Early in June, 1926, McDowell again employed appellant to return the engine to respondent's place of business; and there is a direct conflict in the evidence as to whether or not a price was agreed upon for this service. At any rate, appellant's driver loaded the engine at McDowell's camp in Kitsap county, and then presented a bill covering the thirty dollars charge heretofore referred to, seventeen dollars and a half for other hauling, and forty-five dollars for returning the engine to Seattle; and informed McDowell that he was instructed not to haul the engine back to Seattle until the whole bill was paid.

There is testimony that McDowell agreed to pay the whole bill; but, in any event, he induced the driver to

start on the return trip, and then met him on the road and delivered to him a sealed envelope, said to contain his check. The driver proceeded with his truck, loaded with the engine, to Charleston, where he was to lay over until Monday morning. He turned the sealed en-velope in at the appellant's Charleston office, where it was opened and found to contain a check for thirty dollars only, bearing the notation "Hauling Donkey." McDowell was called up by telephone and a conversation ensued, from which appellant seems to have drawn the conclusion that McDowell then promised to pay the remainder of the bill in Seattle at the time and place of the delivery of the engine.

The engine was transported to respondent's place of business in Seattle, and appellant's driver there presented the bill for all charges, less the thirty dollars paid by check, and demanded payment. Payment being refused by respondent, appellant retained possession of the engine, placed it in storage, and shortly there-after gave notice of a sale to satisfy his claimed lien and the accruing storage charges. Whereupon, this action was brought to enjoin such sale.

After trial on the merits, the trial court made findings of fact and conclusions of law favorable to respondent, and entered a judgment establishing respondent's title to the engine, free and clear of any lien or claims of lien on the part of appellant, enjoined appellant from proceeding with the sale, and awarded costs against him. This appeal followed.

The record indicates that the judgment of the trial court was based upon one or both of the following grounds: (1) That appellant had no certificate of convenience and necessity and was operating the business of a common carrier unlawfully, and therefore may not recover; or (2) that appellant's right of lien, if any, could only be effective as against any interest that Mc-

Dowell might have then had in the engine, and Mc-Dowell's interest as lessee having terminated, appellant's rights, if any, were likewise at an end.

[1] There is a third point presented here which we think is decisive of the case; and that is, that appellant had been paid in full for returning the engine to Seattle, and therefore had no lien against any interest in the engine, or at all.

It seems almost too simple to require demonstration that there could be no lien on the engine for services in hauling other material; and that the right to a lien for hauling the engine from Seattle, in the first instance, was lost when the carrier made delivery, and could not be reinstated by the resumption of possession, under the circumstances here alleged. *Ellison v. Scheffsky,* 141 Wash. 14, 250 Pac. 452, and authorities there cited.

[2] It remains to inquire if there were any unpaid charges for the return of the engine which would support a lien. Admittedly, the charge for taking the engine out was thirty dollars. McDowell says that there was an express agreement to return it for the same sum. This is denied. The person in charge of appellant's office, with whom the order for the return of the engine was placed, says that nothing was then said as to what the charge would be. In the light of all of the surrounding facts, and especially of the prior charge of thirty dollars for a like service, we think the evidence will support a finding that, by agreement, the charge for the return of the engine was to be thirty dollars, which had been paid. The trial court made no findings as to the issue just discussed.

[3] However, appellant testified that the ferriage charge had been increased by four dollars, so that it actually cost him four dollars more to return the engine than it did to take it out. That fact, however, is

not shown to have been known to the person who made the contract with McDowell for the return of the engine, or to McDowell; and, in any event, it would increase the reasonable value of the service rendered by but four dollars; and only in that amount could a lien be claimed. No demand was made upon respondent or upon McDowell for four dollars, and there has been no opportunity to avoid this litigation by the payment of any such sum. Under such conditions, it would be inequitable to now recognize a lien for that amount. If there be any lienable item unpaid, the conduct of the appellant has brought him within the rule laid down in *Robinson v. Brooks*, 31 Wash. 60, 71 Pac. 721.

Our conclusion upon the point just discussed makes it unnecessary to consider the other questions raised in the case.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and PARKER, JJ., concur.