CENTRAL TRUST COMPANY OF ILLINOIS v. DUNCAN ET AL.

[No. 13,465. Filed October 30, 1929. Rehearing denied February 6, 1930. Transfer denied February 18, 1931.]

*U. S. Lesh* and *R. L. Lowther*, for appellant.

*John G. Rauch, J. L. Cadick, W. H. Wemmer, Samuel Ashby* and *M. L. Clawson*, for appellees.

NICHOLS, J.—Action in replevin by appellant against appellees for the recovery of a number of automobile tires and tubes and for damages for the unlawful detention thereof. A supplemental complaint was filed averring that possession of a portion of the property had been obtained since the filing of the original complaint, but it had further deteriorated in value, and the balance thereof had been converted by appellees, on account of which, additional damages were claimed.

There were answers in general denial, in addition to which, appellees Duncan and Burdick filed an affirmative second paragraph of joint and several answer in estoppel.

A trial resulted in a general finding that appellant should take nothing by its action, and that it should pay the costs, on which judgment was rendered, from which finding, after appellant's motion for a new trial was overruled, this appeal.

Appellant relies for reversal upon error of the court in overruling its demurrer to the second paragraph of answer of appellees Duncan and Burdick, and in overruling its motion for a new trial.

The substantial facts, as averred in the second paragraph of answer, and as proved, are that the Central Trust Company was an Illinois corporation, carrying on a banking business; that the Steinbrenner Rubber Company was an Indiana corporation doing business at Noblesville; that appellee Burdick was operating an automobile-accessory-sales plant at Indianapolis under the business name of "The Service Tire Shop," of which he was the sole owner; that, on November 25, 1925, he entered into a contract with the Steinbrenner company. This contract covers 11 pages of appellant's brief, has 30 specifications of terms, and is so complex as to make it difficult of classification in its application to legal principles involved. Epitomizing so as to present the questions here involved, it was a contract of agency, with the company as principal and Burdick as agent, by which it was agreed that the company employed Burdick as its agent to sell in certain territory only, for it and on its behalf, tires, etc., manufactured by it, pursuant to the terms of the contract, commencing November 25, 1925, and terminating November 25, 1926, unless sooner terminated by mutual consent or pursuant to the provisions of the contract. The agent agreed to devote his best efforts to sell the products of the company, at such prices as he might deem satisfactory, but subject to the conditions prescribed, and to remit the proceeds of such sales to the company, to its home office at Nobles-

ville, Indiana. The compensation of the agent, as such, was to consist only of the amount received by him in excess of the amount quoted to him by the company. The company reserved the right to change its selling price on the articles delivered by it to its agent, and all unsold merchandise should then be paid for on the new price basis. The agent agreed to keep absolutely confidential the prices quoted by the company as its selling prices, and the conditions upon which the agent should sell the same.

The title to the merchandise was to be and remain in the company. In case a shipment and delivery should be made to the agent by the company against a negotiable instrument of any kind, the title to the merchandise so shipped and delivered was to remain in the company and the transaction was not to be regarded as a sale until such negotiable instrument had been fully paid. The agent agreed to return all merchandise unsold, on demand of the company, and to keep such merchandise insured against loss or damage by fire, in an amount sufficient to cover the invoice price thereof, and to assign the policy in such amount to the company. In the event of theft, the agent agreed to pay the company the full amount of the value of such merchandise. The company, in addition to having the title, was to have a lien for the value of the merchandise delivered to the agent on the proceeds received by him from the sale of such merchandise. The agent agreed to execute and deliver to the company, along with the contract, a confession of judgment, in blank, in favor of the company, which was to be held by it and used in the manner provided by law only in the event that the agent failed to remit to the company the proceeds received by him from the sale of the merchandise in the regular course of business, or to return merchandise unsold, in which event, the company was empowered and authorized by the agent to insert in

the confession of judgment the amount due the company, and such judgment entered thereon was to be a lien on the real and personal property of the agent, so far as the same was not inconsistent with any provision of the law or judicial decision. Thereafter, Burdick gave four trade acceptances to the company, the first of which was as follows:

"Noblesville, Indiana.
Nov. 25, 1925.

To A. S. Burdick,
Indianapolis, Indiana.
On March 25, 1926, pay to the order of Steinbrenner Rubber Company,
THIRTY-SEVEN HUNDRED THIRTY THREE and 92/100 -- Dollars ($3,733.92)
The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawer may accept this bill payable at any bank, banker or trust company in the United States which he may designate.
STEINBRENNER RUBBER COMPANY.
By M. O. Alt, Cashier.
Accepted Indianapolis, Ind. Nov. 25, 1925.
Payable Marion County State Bank.
A. S. Burdick."

The other three were on like forms. The company sold and transferred these acceptances to appellant, the consideration therefor respectively being a certain amount of cash paid to the company by appellant. Thereafter, Burdick became insolvent, owing about $16,000 to his creditors, including several hundred dollars rent to appellee Ward and insurance premiums to appellee E. G. Spink Insurance Agency.

On March 9, 1926, the Spink agency filed in Marion Superior Court its complaint for judgment and receiver against Burdick, doing business as "Service Tire Company," alleging that Burdick was indebted to it in the

sum of $268.29 for premiums on insurance policies, and that he was also largely indebted to other persons named in the complaint, to whom he had given trade acceptances; that these trade acceptances would become due on or about April 1, 1926, and that there would be no funds with which to meet them; that there would be a dispute among the various parties claiming interest in the stock of goods of the said Burdick, and that, in order to preserve the property, there should be a receiver appointed to take possession of the assets and estate of said Service Tire Company and hold the same under said receivership pending further disposition of this case. Burdick appeared and consented to the appointment of a receiver. On March 9, 1926, the said superior court of Marion County appointed appellee Duncan as such receiver. Duncan filed his bond and duly qualified as such receiver and took possession of the assets as ordered by the court, which assets had been in the possession of Burdick.

On April 8, 1926, the Steinbrenner company, acting by its attorneys, who are now attorneys for appellant herein, by leave of court, filed its verified intervening petition in said receivership proceeding, alleging that it was "the owner of the title to said property and each item thereof," and requesting the court to order the receiver to deliver to it the possession of said property, which is the same property as here involved. An order was made by the court granting said petition on April 15, 1926. Thereafter, by leave of court, appellee Ward filed an intervening petition requesting that the order of the Steinbrenner company's intervening petition be set aside. The court, on June 21, 1926, set aside the order on the intervening petition of the Steinbrenner company and granted a rehearing. Thereafter, on June 22, 1926, appellant, by leave of court, acting by its attorneys aforesaid, filed its intervening petition, in which it alleged

that it was the owner and entitled to the possession of said property. Answers were filed, and there was a joint hearing before the court on the intervening petitions, and, on June 28, 1926, the court found for the receiver and the petitioner Ward, and denied the intervening petitions of the Steinbrenner company and appellant.

Neither the Steinbrenner company nor appellant raised any question in its intervening petition, nor in their motion for a new trial, as to the jurisdiction of the superior court or its right to appoint a receiver in said matter. The Steinbrenner company and appellant filed a joint motion for a new trial in the receiver case and appealed to the Appellate Court, which rendered its decision March 16, 1927, in the case of *Steinbrenner Rubber Co.* v. *Duncan, Rec.* (1927), 86 Ind. App. 218, 155 N. E. 625, reversing the judgment of the trial court and ordering the return of the property to Burdick, and to dismiss the complaint. After the decision of the Appellate Court appellant, on May 6, 1927, commenced this action against appellees Duncan, Ward, Burdick and E. G. Spink Agency, alleging that appellant was the owner and entitled to the possession of the property involved, and that it was unlawfully detained by appellees and, by reason of the unlawful detainer, has depreciated in value, and, by a supplemental complaint, on October 10, 1927, alleges that appellees have unlawfully detained possession of such property and that it has been converted to the use of appellees, averring additional damages.

As it seems to the court, the deciding questions in this case are as to appellant's title to, and right to possession of, the property in controversy. It is fundamental that in a replevin action, such as here, the plaintiff must allege and prove that it has the title to, and the right of possession of, property sought to be replevied, and, if there is a failure in this regard, there can be no recovery, even though the pos-

session of the defendants is wrongful. It is apparent that the contract between Burdick and the Steinbrenner company was one of agency, and that the conditional-sales feature therein is but an incident of and ancillary to the agency. In *Steinbrenner Rubber Company* v. *Duncan, supra,* this court held that, under the contract, Burdick was a factor, selling goods of the appellant. As an agency contract, it was not assignable without the knowledge and consent of Burdick, and it nowhere appears that such consent was ever given. It is true that Burdick accepted the trade acceptances, and that they were indorsed and transferred by the Steinbrenner company to appellant, but there is no reference in any one of them to a conditional sale of the property here involved, or any provision therein that the title to the property should remain in the Steinbrenner company or be by it transferred to appellant as assignee of the acceptances. The only statement with reference thereto is that "the obligation of the acceptor hereof arises out of the purchase of goods from the drawer." Assuming that the conditional-sales provision of the contract was the dominant feature thereof, and we do not so hold, still it does not appear that there was ever any assignment or transfer of such contract to appellant. It is appellant's contention that the indorsement of the trade acceptance to it carried with it the alleged conditional-sales contract. But, even if the contract were a conditional-sales contract, the law as declared by the Supreme Court in *Domestic Sewing Machine Co.* v. *Arthurhultz* (1878), 63 Ind. 322, does not bear out appellant's contention. Appellant contends that this case is out of harmony with decided cases in this state and elsewhere, and that it should be overruled, and, to that end, that this case should be transferred to the Supreme Court with the recommendation that such case be overruled. The judgment here must be affirmed on grounds other than

this, and we, therefore, will not transfer the case to the Supreme Court with recommendations. It is to be observed that, in that case, there was a blank indorsement of a contract which contained a conditional-sales provision, while here there is no such provision in the acceptances which were transferred by blank indorsement, and there was no indorsement or assignment of the contract containing the conditional-sales provision. Appellant relies upon *Heyns* v. *Meyer* (1910), 46 Ind. App. 45, 91 N. E. 973, but, in that case, there was an assignment of the conditional-sales contract, and, in that regard, it is to be distinguished from the instant case. The other Indiana cases cited and relied upon pertain to mechanics' liens and vendor's liens in sales of real estate. That there is a distinction between conditional-sales contracts and liens of whatever kind, see *Schneider* v. *Daniel* (1921), 191 Ind. 59, 131 N. E. 816, 17 A. L. R. 1410. In conditional-sales contracts, the title does not pass, but remains in the seller, and he may pursue it in specie, while, in vendors' liens, the title does pass, but a lien is reserved, and it is held, as appears by appellant's authorities, that the lien follows the note given for the unpaid purchase price, as security therefor, though there is no direct assignment of the lien. But, in conditional sales, the title remains in the seller, unless and until transferred by proper assignment thereof. We are aware that there are authorities to the contrary in other states, but we believe we have fairly stated the rule in this state.

If appellant is right in its contention that the title to the property involved followed the trade acceptances into its hands though there was no transfer or assignment of such title, still, under the facts as revealed by the record, it must fail in this action. It appears that these trade acceptances were by appellant reassigned by delivery to the Steinbrenner company, and that the indorsement made by the Steinbrenner

company was, after such reassignment by delivery, stricken out by appellant's attorneys, who are the same attorneys who now represent appellant. If the property followed the trade acceptances into the hands of appellant, by the same process, it must have followed them out, and into the hands of the Steinbrenner company, and it appears that the Steinbrenner company, by these same attorneys, thereafter filed an intervening petition in the Duncan case, alleging that it was the owner of the property and entitled to the possession thereof. If at that time appellant understood that it had title to the property involved by reason of its ownership and possession of the trade acceptances, we can see no reason why it retransferred the trade acceptances to the Steinbrenner company, with authority, as it claims, for the latter to act for it as its agent, the Steinbrenner company thereafter acting in its own name, unless it was because appellant then understood that the title to the property had not followed the trade acceptances into its hands, but still was in the Steinbrenner company, and it, therefore, sent the acceptances back to meet the title to the property in the hands of the Steinbrenner company. Any way, it is clear that, at the time of the commencement of this action, the trade acceptances under which appellant claims to be the owner of and entitled to the possession of the property, were not held by appellant, but were held by the Steinbrenner company, which then held the title to the property, and, on demand, under its contract of agency with Burdick, and proper proof of non-payment by Burdick, had the right to possession, and now that the Steinbrenner company is in the hands of a receiver, it follows that the receiver, on conditions above, has the right of action. Under this state of the record, we do not see how appellant can maintain its suit.

Judgment affirmed.