Clark TUCKER, Defendant-Appellant,

v.

CAPITAL CITY RIGGERS,
Plaintiff-Appellee.

No. 1-781A221.

Court of Appeals of Indiana,
First District.

July 27, 1982.

---

Clifford G. Antcliff, Antcliff & Antcliff, Greenwood, for defendant-appellant.

Jerry Lux, Terry, Robison & DePrez, Shelbyville, for plaintiff-appellee.

NEAL, Judge.

Plaintiff-appellee Capital[1] City Riggers (Capital) sued defendant-appellant Clark Tucker (Tucker) for replevin of a fork lift Tucker had moved to Indiana. Tucker counterclaimed for his moving fee and other sums Capital owed. Following a bench trial the Johnson Circuit Court entered judgment for both parties, and Tucker appeals.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the judgment is as follows. Defendant-appellant Clark Tucker (Tucker) was in the business of moving heavy machinery. His principal place of business was Trafalgar, Indiana. Capital City Riggers (Capital) is an Indiana corporation whose principal place of business is in Fairland, Indiana; William Meredith (Meredith) is the president of Capital. In July 1980, Capital was working on a job in Oklahoma[2] when Tucker went to see Meredith about a job. Capital had contracted to move a plant in Merced, California to Greenville, South Carolina. Tucker subcontracted with Meredith to move some of this equipment. The job required a large fork lift, and Meredith agreed that Tucker should move Capital's large fork lift to California and use it when Capital did not need it.

When Tucker arrived in California on July 29, 1980, Meredith was already on the job. There is substantial evidence that while the parties were in California, Meredith asked Tucker to move the large fork lift to Indiana after the California job was complete. Tucker took the fork lift to Indiana on or about September 29, 1980. At trial Meredith insisted that no final agreement to move the fork lift to Indiana was ever reached, and it is this agreement which

is the source of controversy in the case at bar. After Meredith learned that Tucker had taken the fork lift, a Capital employee contacted Tucker and demanded that he return it. Tucker refused to return the fork lift until he had been paid $6,500 due from the California job, $1,200 for another job, and the agreed price for moving the fork lift, $2,500. Capital did not offer to pay any of these sums.

Capital sued Tucker for replevin, seeking recovery of the fork lift plus damages for the loss of its use and punitive damages. Tucker counterclaimed for the moving charges for the fork lift and the other sums Capital owed him. The trial court entered judgment in favor of Capital for $13,836 and in favor of Tucker for $10,200.

## ISSUES

We have condensed the three issues stated in Tucker's brief as follows:

I. Whether the judgment for Capital, which required a finding that Capital was entitled to immediate possession of the fork lift, is contrary to law in that it is inconsistent with the judgment for Tucker, which required a finding that Tucker was at some time rightfully in possession of the fork lift; and

II. Whether the evidence is sufficient to support the judgment for the plaintiff.

We will address these issues jointly.

## DISCUSSION AND DECISION

■ Tucker argues that a judgment favorable to both parties is logically inconsistent and therefore contrary to law. Under our standard of review we will uphold the judgment if it is supported by any legal theory substantiated by the evidence.

1. The briefs and record spell the appellee's name as "Capital" and "Capitol." We have adopted the spelling used on the appellee's printed checks which were exhibits in the transcript.

2. The parties have not argued for the application of the law of any state but Indiana. There-

fore we may presume the applicable law to be the same as that of Indiana. *Igleheart Brothers, Inc. v. John Deere Plow Company*, (1943) 114 Ind.App. 182, 51 N.E.2d 498; *see Cunningham v. Universal Battery Division-Yardney Electric Corporation*, (1976) 170 Ind.App. 166, 352 N.E.2d 83.

Creech v. LaPorte Production Credit Association, (1981) Ind.App., 419 N.E.2d 1008; see D. H. v. J. H., (1981) Ind.App., 418 N.E.2d 286. We do not weigh the evidence or assess the credibility of witnesses. Fort Wayne National Bank v. Scher, (1981) Ind. App., 419 N.E.2d 1308; Hoosier Insurance Company v. Mangino, (1981) Ind.App., 419 N.E.2d 978.

■ In a replevin action it is fundamental that the plaintiff must prove his right to possession of the property. He must prove his right to possession on the strength of his own title, not merely the weakness of the defendant's title or right to possession. Aircraft Acceptance Corporation v. Jolly, (1967) 141 Ind.App. 515, 230 N.E.2d 446; Central Trust Company of Illinois v. Duncan, (1929) 92 Ind.App. 224, 168 N.E. 506. Woods v. Shearer, (1914) 56 Ind. App. 650, 105 N.E. 917; Reardon v. Higgins, (1906) 39 Ind.App. 363, 79 N.E. 208. When the defendant has obtained the property lawfully, the plaintiff must demand its return and the defendant must refuse before replevin will lie; no demand is necessary, however, when the defendant assumes a position indicating that a demand would be unavailing. See Butler v. Wolf Sussman, Inc., (1943) 221 Ind. 47, 46 N.E.2d 243; Hays v. Burns, (1939) 106 Ind.App. 374, 19 N.E.2d 862.

In the case at bar there was substantial evidence that Capital owned the fork lift and demanded its return. Tucker refused to return the fork lift until Capital paid for the moving of the fork lift and the balance due on the two separate contracts. Capital made no tender of any of these sums, taking the position that there was never a contract to move the fork lift, and Tucker's acquisition of the fork lift was wrongful. Since the trial court awarded Tucker damages, including the moving charge, and Capital has not cross appealed, we must assume a valid contract to move the fork lift. The decisive issue in this appeal is whether Tucker had a valid carriers' lien giving him the right to possession of the fork lift at the time of this suit.

■ In his carriers' lien argument, Tucker asserts that he has a common law carriers' lien for all the sums owed him. Although Tucker cites no cases on point, we are aware of authority indicating that common carriers have a lien for their freight charges at common law. Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. The Anderson Tool Company, (1913) 180 Ind. 453, 103 N.E. 102; The Adams Express Company v. Harris, (1889) 120 Ind. 73, 21 N.E. 340. However, contract carriers have no common law lien, Picquet v. M'Kay, (1831) 2 Blackf. 465, and Tucker makes no suggestion that his business is other than that of a contract or private carrier. See generally Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Henry, (1908) 170 Ind. 94, 83 N.E. 710; I.L.E. Carriers § 1. Any lien Tucker might have had was statutory. Ind.Code 26–1–7–307 (1976) does not control this case because there was no bill of lading. The applicable statute is Ind.Code 32–8–32–1 (1976) et seq. Being in derogation of the common law, this statute must be strictly construed. Miles Homes of Indiana, Inc. v. Harrah Plumbing and Heating Service Co., Inc., (1980) Ind.App., 408 N.E.2d 597; Riggins v. Sadowsky, (1980) Ind.App., 403 N.E.2d 1152. Section 2 of the statute provides in part:

"Any transfermen, draymen, and all other persons, firms, or corporations engaged in packing for shipment or storage or transferring, hauling or conveying goods, merchandise, machinery, machines or other articles of value from place to place, or for money paid for freight, storage, or demurrage charges or for erecting machines, machinery, stacks or other equipment, wishing to acquire such a lien upon any of this property, whether the claim be due or not, shall file in the recorder's office of the county at any time within sixty (60) days after performing such labor or payment of money, described in section one (1) of this act, notice of his intention to hold a lien upon such property for the amount of this claim, setting forth the amount claimed,

and a substantial description of the property." (Emphasis added.)

Section 3 further provides:

"The recorder shall record the notice, when presented, in the miscellaneous record book, for which he shall receive twenty-five cents ($.25), and *all liens so created* shall relate to the time the labor was begun or money advanced, and shall have priority over all liens suffered or created thereafter." (Emphasis added.)

The language of the statute is mandatory and indicates that compliance with the notice requirement is a prerequisite to the acquisition or creation of the lien. Tucker apparently did not file any notice, although the question of his compliance has not been raised. Since the statute indicates that the filing of the notice is the act which creates the lien, the trial court could have found that Tucker had no lien.

■ Another theory which would undermine Tucker's lien and his right to possession is waiver. Ind.Code 32–8–32–1 clearly limits the lien to charges directly relating to the object transported. Tucker, however, demanded payment of additional sums due him. The evidence shows that these contracts were separate from the contract to move the fork lift to Indiana. The trial court could have concluded that Tucker's demands were made in bad faith and waived his lien.

■ A similar case from Indiana is *Anderson Tool, supra.* This was an action for replevin of some parts shipped by the railway. The railway had advanced the C. O. D. charges to the consignor and sought to recover these charges along with the freight charges from the consignee on delivery. The consignee tendered the freight charges but refused to pay the C. O. D. charge. The railway refused to deliver until all charges were paid. The Indiana Supreme Court upheld the judgment for the plaintiff, stating that the railway's lien was limited to the cost of carriage.

"Appellant complains of the insufficiency of the evidence because the tender was not kept good by its payment into court. The object of a tender is to enable the other party to accept, and thus escape further liability at any stage of the proceeding.... In *Vinton v. Baldwin* (1884), 95 Ind. 433, it was held that where one party to a contract notifies the other that he will not perform it, performance is unnecessary by the other, citing cases. To the same effect are, *House v. Alexander* (1885), 105 Ind. 109, 4 N.E. 891, 55 Am.Rep. 189; *Platter v. Board, etc.* (1885), 103 Ind. 360, 2 N.E. 544; *Mathis v. Thomas* (1884), 101 Ind. 119. It may be doubtful under these cases whether a tender was even necessary, in view of the ground of the refusal by appellant to deliver the goods. Doubtless it is a safer practice to make and keep the tender good, but there are cases in other jurisdictions holding that appellant waived the payment of the money into court by going to trial without this being done." (Citations omitted.)

*Id.*, 180 Ind. at 460, 103 N.E. 102. Although this case is distinguishable from the instant one, we do not deem it significant that Capital was unwilling to tender the moving charges. As in *Anderson Tool*, Tucker's conduct indicated that he would not return the fork lift until all the sums were paid. A survey of related cases indicates that plaintiffs are generally not required to make useless gestures of demand or tender in order to recover. *See Butler, supra; Hays, supra; Woods, supra; Contractors Machinery & Storage Company v. Gueguen,* (1927) 145 Wash. 430, 260 P. 669; *Robinson v. Brooks,* (1903) 31 Wash. 60, 71 P. 721. In *Contractors, supra,* and *Robinson, supra,* parties had claimed a lien for amounts which were not lienable. The Washington Supreme Court considered this evidence of bad faith and held that the lien was waived as to all amounts claimed. We conclude that property subject to a lien cannot be held hostage for unrelated debts, and an attempt to do so waives the lien.

■ It is clearly unlawful to seize the property of another without legal process, lien, or agreement and hold it until a debt is paid. *See Sisler v. Smith,* (1953), Okl., 267 P.2d 1081; *Hildebrand v. Delta Lumber and*

Box Company, (1944) 67 Cal.App.2d 88, 153 P.2d 377; 89 C.J.S. *Trover and Conversion* § 83. Likewise a lienholder acts unreasonably and in bad faith when he refuses to relinquish encumbered property until certain unrelated debts are paid, and the trial court could have construed Tucker's actions as a waiver of his lien. Therefore, once he had refused to return the fork lift, Tucker was wrongfully in possession of Capital's property and liable in replevin. Nevertheless he was entitled to the money owed him for moving the fork lift as previously agreed, as well as the amounts still owing on the other two contracts. Hence, the trial court correctly awarded damages to both parties, and the judgment is supported by the law and the evidence.

▪ Tucker raises two additional arguments. The first concerns the bailment of the fork lift during the California job. Tucker argues that since he was never paid for this job, the bailment never ended and his possession remained lawful. He cites no authority for this argument. A bailment is a contract, and it is the express or implied agreement of the parties which creates its terms. *See Spencer v. Glover*, (1981) Ind. App., 412 N.E.2d 870; *Weddington v. Stolkin*, (1952) 122 Ind.App. 670, 106 N.E.2d 239. In this case the evidence supports the inference that the bailment for the California job was intended to end when Tucker was finished using the fork lift for that job. *See Spencer, supra.* It was agreed that Tucker could use the fork lift when Capital did not need it; this agreement could not reasonably be construed to mean that Tucker could deprive Capital of the use of the fork lift until Tucker was paid for the job.

Finally, Tucker argues that there was insufficient evidence to support the amount of Capital's damages and that the court may not have applied the correct measure of damages. Tucker's motion to correct errors is not sufficient to raise this argument, and it is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Plough v. Farmers State Bank of Henry County*, (filed June 22, 1982) Ind.App., 437 N.E.2d 471, No. 1–181 A 21; *Hockelberg v. Farm*

*Bureau Insurance Company*, (1980) Ind. App., 407 N.E.2d 1160.

For the reasons given above, we affirm the judgment of the trial court.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.