In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3352

REGINALD D. WHITTINGTON, JR.,

*Plaintiff-Appellant,*

*v.*

INDIANAPOLIS MOTOR SPEEDWAY FOUNDATION, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-333—**Larry J. McKinney**, *Judge.*

ARGUED DECEMBER 11, 2009—DECIDED APRIL 13, 2010

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Reginald Whittington sued the Indianapolis Motor Speedway Foundation, Inc. ("Foundation") for tortious conversion and replevin of a 1979 Kremer Racing Porsche 935 K3 automobile, which is on display at the Foundation's Hall of Fame Museum. Whittington delivered the racing car to the Foundation in the early 1980s and sought its return in 2004. Whittington claimed that he loaned rather than donated the car to the

Foundation, and thus is entitled to have it returned. The Foundation refused to return the car because it says the car was a donation in kind from Whittington and his brother. The district court found that Whittington's post-transaction behavior was more consistent with the car being a gift rather than a loan, and that he failed to prove that he had a possessory interest in the car in 2004. Accordingly, the court held that his claims for tortious conversion and replevin failed. We affirm.

## I. BACKGROUND

Reginald "Don" Whittington ("Whittington") is a former race car driver. During his racing career, Whittington and his brother, Bill Whittington, participated in a number of races with a variety of vehicles. Along with his brother and another driver, Klaus Ludwig, Whittington won the 1979 Le Mans 24-hour endurance race in France while driving the Porsche 935 K3 car in question. Whittington testified that one of the corporations owned by the Whittington brothers originally purchased the Porsche 935 K3. The record is not clear which of the brothers' corporations made the original purchase.

The district court noted that Whittington claimed that Road Atlanta, Inc. originally purchased the car. The Foundation's statement of facts, however, points to testimony by Robert Jackson Zeigler, an employee and business manger of the Whittington brothers, which indicates that Whittington Brothers Racing, Inc. was the owner. (App. at 73-74.) Whittington also argued that at some point the

car was owned by Road Atlanta, which later dissolved, thereby leaving Don Whittington as the sole shareholder and purported owner of the car. Records with respect to Road Atlanta or distribution of its assets no longer exist.

The brothers continued to race the car for a short period, but due to rules changes and a crash involving the car, it was retired from racing.

The specific circumstances regarding the transfer to the Foundation remain, in large part, a battle of witnesses. No documentation exists regarding the original transfer. Key witnesses have since died. That leaves the parties in the difficult position of relying solely on witness testimony, which is conflicting to a large degree. Whittington testified that he met with Charles Thompson in May 1980, and that they specifically discussed the transfer of the car to the Foundation as an indefinite loan. Thompson, now deceased, was the superintendent of grounds at the Indianapolis Motor Speedway. Witnesses testified that Thompson kept his office at the museum and had general access to the museum, which is located on the grounds of the Indianapolis Motor Speedway.

Because Whittington's argument relies heavily on his assertion that Thompson had the authority to make the deal with him on behalf of the Foundation, and did so, the district court noted in its summary judgment order that although Thompson's title was superintendent of grounds and buildings, he was well respected in motor racing circles (App. at 15), and Whittington testified that Thompson was the "go-to-guy" (App. at 40) and that he had the "key to the gate" (App. at 16). Whittington

claimed that he did not discuss the purported loan with anyone else affiliated with the Foundation.

Jack Martin, the director of the museum at the time, testified that Thompson replaced the former superintendent, Clarence Cagle, in the mid-1980s. In contrast to Whittington's testimony, Martin recalled that Whittington's brother, Bill, initiated the alleged proposal with Cagle, who, in turn, referred him to Martin. Martin also testified that the proposal was described as a gift, and that he never expressed any interest in the car on behalf of the Foundation other than as a gift. Martin further testified that very few cars were received by the Foundation on a loan basis, which was especially true for cars with little or no connection to the Indianapolis Motor Speedway. In essence, the only details about the transfer on which the parties can agree is that no records of the transfer exist and that the transaction was a "hand-shake" deal.

Whittington asserts that after delivering the car to the Foundation, he continued to maintain ownership and control through a company owned by his brother and himself. Whittington was convicted subsequently of an unrelated tax conspiracy and imprisoned for 18 months. He claims that upon dissolution of the company and in preparation for his incarceration, he disclosed to the government that the Porsche 935 K3 was part of his personal assets. Jack Zeigler, the Whittingtons' business manager, similarly testified that the car appeared on the corporate records of one of the brothers' corporations, Road Atlanta. He also testified that he relied on Whittington's own representations when he included the car on

numerous financial statements. No documentation with respect to any of this has been produced.

The museum has records showing that the Porsche 935 K3 was insured by the museum, although that is not particularly persuasive because the museum insures both gifts and loans. The district court noted that Ellen Bireley,[1] director of the museum since 1996, undertook an effort at one point to determine the ownership of the various vehicles in the museum's possession. She testified that the museum kept documentation for owned cars and loaned cars in separate files in separate drawers, and that the Porsche 935 K3 was listed and filed as a donated, or owned, vehicle. However, she admitted that the file was created well after the transfer.

Bireley was also unable to produce any documents indicating how the museum had acquired possession of the car. The Foundation did not list the Porsche 935 K3 as a gift on its 990 tax forms from 1980 to 1995; however, it obtained an Indiana certificate of title for the Porsche 935 K3 in 2001 and has consistently listed it as an asset of the Foundation. At oral argument, Whittington's counsel noted that the fact that Whittington had not previously titled the car is irrelevant because racing cars are typically not titled.

Since the transfer of the car in the early 1980s, Whittington has had very little contact with the Foundation. He

---

[1] The district court, and some parts of the record, spelled her name as Ellen "Beirley." She spelled her name in a letter to Whittington as Ellen "Bireley." (App. at 159.)

allegedly viewed the car in 1985, at which time he claimed he met with Thompson, but he said they did not discuss the ownership of the Porsche 935 K3. Whittington testified that he called the Foundation in 2004 and requested the return of the car for an event involving vintage Porsche cars. He said he learned at that time through Tony George, a Foundation representative, that the Foundation claimed ownership of the car. Bireley sent Whittington a letter in October 2004 confirming the Foundation's ownership claim.

Whittington filed a two-count complaint, claiming tortious conversion and replevin. The Foundation denied the allegations and asserted affirmative defenses of laches, statute of limitations, and waiver and estoppel. Both parties moved for summary judgment, which the district court denied with respect to each. Following a one-day bench trial, the district court found in favor of the Foundation on both counts.

## II. ANALYSIS

Whittington now challenges the district court's ruling on both counts. First, he argues that he presented sufficient evidence to establish that the Foundation converted the Porsche, and that he is entitled to its return. Second, Whittington claims that the district court inappropriately placed the burden of proof on him to show that the transfer of the Porsche to the Foundation was not a gift. Third, he argues that the district court erred in finding that Whittington possessed the donative intent necessary to give the Porsche to the Foundation.

Following a bench trial, we review the district court's findings of fact for clear error, but review conclusions of law *de novo*. *Murdock & Sons Constr., Inc. v. Goheen Gen. Constr., Inc.*, 461 F.3d 837, 840 (7th Cir. 2006). We will not review witness credibility or reweigh the evidence. *Id*.

Indiana law defines tortious conversion as an "appropriation of the personal property of another to the party's own use and benefit . . . or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's." *Schrenker v. State,* 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010). To succeed on a claim for replevin under Indiana law, a plaintiff "must prove his right to title or possession, that the property is unlawfully detained, and that the defendant wrongfully holds possession thereof." *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004). Indiana thus places the initial burden of proving a replevin claim on the person seeking repossession: "[t]he plaintiff must prove his right to possession on the strength of his own title, not merely the weakness of the defendant's title or right to possession." *Id*. at 1067-68 *(citing Tucker v. Capital City Riggers*, 437 N.E.2d 1048, 1051 (Ind. Ct. App. 1982)). The burden only shifts to the defendant to show a right of possession after the plaintiff first establishes a prima facie case of right of possession. *Id*. at 1068 *(citing Warner v. Warner*, N.E.2d 773, 775-76 (Ind. Ct. App. 1937)).

The district court concluded that Whittington failed to establish by a preponderance of the evidence that the

Porsche 935 K3 was on loan to the Foundation, and that Whittington failed to prove he had a property right in the car when he demanded its return in 2004. We do not find clear error in the district court's findings.

Because little, if any, documentation exists regarding the prior ownership and transfer of the Porsche 935 K3, the district court's findings of fact properly relied on witness testimony and common-sense interpretations of the circumstances surrounding the exchange. Whittington offered no clear evidence to establish a present property right in the car when he demanded its return in 2004. Whittington's former business manager testified that he included the car on Road Atlanta's financial statements during the period while it was at the museum, but he also testified that he relied on Whittington's own representations of his ownership in doing so.

In an effort to prove that ownership of the Porsche 935 K3 never transferred, Whittington claimed that he loaned the car to the Foundation. His primary support for this argument was his own testimony regarding his communication with the now-deceased former superintendent of grounds, Charles Thompson. It is unclear what Thompson's exact role was in 1980 when this purported communication took place. Notwithstanding the ambiguity of Thompson's role, the museum's former director, Jack Martin, testified that Thompson would not have had any authority whatsoever to enter into such a transaction.

The Foundation was in present possession of the car when Whittington demanded its return in 2004, and it provided testimony supporting an inference that the

Foundation owned it. Martin testified that Whittington's brother expressly offered to donate the car to the museum. He also testified that it would be highly unusual for the museum to accept cars with little or no connection to the Indianapolis Motor Speedway on loan. In addition, at the time the Foundation titled the car in Indiana, Martin submitted a sworn affidavit attesting that the car was donated. Finally, the present director of the museum, Ellen Bireley, testified that the museum consistently filed and listed the car as an asset of rather than a loan to the Foundation.

The district court made a salient and proper note of the fact that Whittington's post-transaction behavior was inconsistent with the car being on loan. Whittington apparently made no effort to communicate with the Foundation from the time of the transfer in the early 1980s until he demanded its return in 2004. Given the circumstances of Whittington's self-proclaimed dealings with Thompson, coupled with his current claim of continuous ownership, it appears both odd and instructive to this court that Whittington never attempted to contact the Foundation following Thompson's death.

We are handicapped, as is Whittington, by the lack of documentation with respect to the nature of the transaction between him and the Foundation. As observed by a member of this court at oral argument, the lesson for Whittington should be that an unwritten contract is not worth the paper it isn't written on. We find that the district court did not clearly err in its finding that Whittington failed to prove a property right in the Porsche 935 K3. His claims for conversion and replevin fail.

Next, Whittington argues that the district court improperly placed the burden of proof on him as plaintiff. Whittington argues that the district court required him to prove both that the car was not a gift and that he had a property right in the car. Whittington's argument falls flat. As previously noted, Indiana places the burden on Whittington, as plaintiff, to prove a property right in the car; and whether the car was loaned was essential to the existence of such a right. In other words, because his having a present possessory interest in the car was an essential element to his conversion and replevin claims, Whittington was required to prove he loaned the car to the museum. The district court properly assigned the burden of proof in this case to Whittington, and we agree he did not carry that burden.

The last issue raised by Whittington in this case is whether the district court erred by finding that he possessed the donative intent necessary to give the Porsche to the Foundation. We need not address this argument, however, because the district court made no such finding, and in any event, his failure to prove his claims for conversion and replevin are dispositive of this issue.

### III. Conclusion

Having found no error in the district court's findings, we AFFIRM in all respects.