**UNITED FARM FAMILY MUTUAL INSURANCE COMPANY, Appellant–Defendant,**

v.

**Harold MICHALSKI, and Riverside Lounge & Marina, Inc., Appellees–Plaintiffs.**

No. 45A03–0310–CV–00393.

Court of Appeals of Indiana.

Sept. 20, 2004.

Jeanne B. Blumenthal, Chesterton, IN, Attorney for Appellant.

Scott E. Yahne, Efron, Efron & Yahne, P.C., Hammond, IN, Attorney for Appellees.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Appellant, United Farm Family Mutual Insurance Company ("United"), appeals from the trial court's adverse judgment in an action for replevin of a boat known as Velocity brought by Riverside Lounge & Marina, Inc. ("Riverside") and Riverside's owner, Harold Michalski. Upon appeal, United presents four issues for our review, one of which we find dispositive: whether the trial court erred in finding for and awarding damages to Michalski and Riverside in their action for replevin.

We reverse and remand.

This litigation centers around who, between the parties, has proper legal title and a right to possession of a 1988, thirty foot, Regal cigarette boat, HIN RGMT1035K788, known as Velocity. The facts most favorable to the trial court's judgment reveal that Harold Urbanski, Sr. ("Urbanski") purchased Velocity on May 13, 1994 and was issued a watercraft certificate of title in Illinois. Urbanski had insurance coverage on Velocity through United under policy number 1455551. On June 11, 1998, Urbanski filed a claim with United asserting that Velocity and its trailer had been stolen on or about June 5, 1998,[1] from Doyne's Marina in Portage, Indiana, the marina which he regularly

---

1. Urbanski also notified the police of the theft. The police report, however, was not admitted as evidence at the bench trial. In addition to reporting the theft of Velocity and its trailer,

used for summer storage.[2] United conducted its own investigation into the alleged theft and concluded that Urbanski's theft claim was legitimate. On July 25, 1998, United and Urbanski executed a final settlement under which United paid Urbanski's theft claim loss in the amount of $40,372.50,[3] and in exchange Urbanski transferred his ownership interest in Velocity and its trailer by signing the title to both over to United.[4]

According to records submitted by Michalski and Riverside, Robert Krzesinski dropped Velocity off for storage at Riverside's marina in October 1997.[5] Krzesinski claimed that a friend of a friend, an individual whom he did not know, had contacted him about purchasing a boat motor and installing that boat motor, as well as one to be supplied by the individual, on a boat. The boat, identified as Velocity, was dropped off at the home of Krzesinski's parents by an individual Krzesinski knew only as "Bob." When Velocity was dropped off, Krzesinski observed that it had no motors, no seats, no cover, and no outdrives. The individual Krzesinski knew as

"Bob" left his cell phone number and agreed to return with the second boat motor so that Krzesinski could install it on Velocity. Over the next several months, Krzesinski spoke with "Bob" on one other occasion, but he never saw him again. Krzesinski never completed the work on Velocity because "Bob" never delivered the second boat motor and did not pay for the services Krzesinski was willing to provide. In attempting to contact "Bob," Krzesinski learned from a friend that the individual he knew as "Bob" perhaps lived at a certain location in Calumet City. Krzesinski went to that location, but no one was ever there.

Approximately four to six months after Velocity was dropped off by "Bob," Krzesinski hauled Velocity to Riverside for storage. Upon dropping Velocity off, Kellie Nowakowski, an employee of Riverside, provided Krzesinski with Riverside's vessel storage agreement.[6] Krzesinski signed the agreement which provided that the storage fee was eighteen dollars per foot for the thirty-foot boat, or $540 per sea-

Urbanski also reported that his Suburban, the vehicle to which Velocity and its trailer were hitched, was also stolen. About a month after the reported theft, the Suburban was recovered in Chicago. The driver's side window was broken and the ignition lock had been pulled out.

2. Michael Doyne, owner of Doyne's Marina, testified that Urbanski regularly stored Velocity for the summer season at the marina. However, the latest invoice issued to Urbanski was dated April 17, 1997 and was for the summer storage fee for 1997. Mr. Doyne had no records showing that Urbanski stored Velocity at the marina during the 1998 summer season.

3. Of that amount, $37,800 was determined to be the fair market value of Velocity and $2,572.50 was attributed to the value of the trailer.

4. Apparently, United did not register its title to Velocity with the appropriate department of the State of Illinois.

5. We note the following facts as background to explain the discrepancies in the dates between Urbanski's claim of theft in 1998 and the claim that Velocity was delivered to Riverside's marina in 1997. Urbanski maintained that he stored Velocity at John's Storage near Joliet, Illinois for the fall and spring of 1997–1998. Prior to taking a trip on or about June 5, 1998, Urbanski claimed that he dropped Velocity off at Doyne's Marina. It was upon returning from his trip that he discovered that Velocity had been stolen and that he made his claim with United.

6. Ms. Nowakowski testified that she did not ask Krzesinski if he owned Velocity, rather, she assumed that he did. She further testified that it is not Riverside's policy to have customers show ownership of boats being left for storage.

son.[7] When Velocity was dropped off at Riverside, it was nothing more than a hull. Velocity sat idle at Riverside for over sixteen months, and no one ever paid the storage fees.[8] Over the course of two winter storage seasons and one summer storage season, the total storage bill for Velocity accumulated to $1,944, including interest. Riverside maintained that pursuant to Illinois law, it held a lien against Velocity in that amount.[9]

In February 1999, after Velocity had been stored at the Riverside marina for sixteen months without payment, Michalski employed Marion Weglarz of Title Services of Illinois, Inc., to assist in satisfying the lien or in obtaining a new certificate of title for Velocity. Mr. Weglarz began by requesting a title search on Velocity. Pursuant to his request to the Illinois Department of Natural Resources, Mr. Weglarz learned that Urbanski was the registered owner of Velocity and that the registration for Velocity under his name was to expire on June 30, 2000. On March 4, 1999, Mr. Weglarz sent a letter to Urbanski via certified mail to the address on Urbanski's title to Velocity—601 Burnham Avenue, Calumet City, Illinois, 60409—informing him that Velocity was going to be disposed of at a public sale in thirty days[10] under the provisions of what was referred to as the Illinois Mechanic's Lien law[11] if he did not pay the lien amount and take possession of Velocity within that time.[12] The letter to Urbanski was returned as undeliverable. Mr. Weglarz also had a notice of the sale published in the March 11, 1999 issue of Star Publications, a local newspaper.

Apparently, the sale was conducted at the time and place indicated in the notices, but no one appeared in order to bid on Velocity, except for Michalski who submitted a paper bid in the amount of Riverside's claimed lien. Thereafter, Ms. Nowakowski signed a Mechanic's Lien Affirmation in which she affirmed that "[t]he ... storage furnished for [Velocity] was completed at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof in accordance with Illinois Compiled Statutes."[13] Plaintiff's Exhibit 5. Ms. Nowakowski also affirmed that the notice requirements of the applicable statutes had been complied with. According to Mr. Weglarz, this document was prepared and submitted to the Illinois Department of Natural Resources in order to obtain a new title after the sale pursuant to the provisions of the Labor and Storage Lien (Small Amount) Act was completed.[14]

---

**7.** Krzesinski stated that he never represented to Michalski or anyone at Riverside that he owned Velocity.

**8.** Invoices for the storage fees were sent to Krzesinski.

**9.** Although not specifically referred to, it is apparent from the record before us that Riverside asserted its lien pursuant to the Illinois Labor and Storage Lien (Small Amount) Act, 770 ILL. COMP. STAT. 50/1–50/6 (2001).

**10.** The letter indicated that the sale would be conducted between 9:00 a.m. and 4:00 p.m. on April 15, 1999 at Riverside's marina.

**11.** Again, it is apparent that the notice was pursuant to the provisions of the Illinois La-

bor and Storage Lien (Small Amount) Act. See 770 ILL. COMP. STAT. 50/3 (2001).

**12.** Mr. Weglarz also sent a similar letter via certified mail to Robert Krzesinski.

**13.** At the top of the affirmation, a box is checked indicating that the affirmation was being made pursuant to the Illinois Labor and Storage Lien (Small Amount) Act, 770 ILL. COMP. STAT. 50/1–50/6. The language quoted tracks the language of 770 ILL. COMP. STAT. 50/1.

**14.** Further, at the bottom of the affirmation there is a statement which provides that the affirmation "must accompany all mechanic's lien applications for which a Certificate of Title is requested." Plaintiff's Exhibit 5.

Thereafter, on May 21, 1999, the Illinois Department of Natural Resources issued a watercraft certificate of title for Velocity to Riverside.

Only after a title was issued to Riverside for Velocity did Michalski begin restoring and repairing Velocity. On May 5, 2000, Michalski obtained a loan using Velocity as collateral. Prior to obtaining the loan, Michalski assigned the title to Velocity from Riverside to himself. Michalski estimated that he had installed on Velocity parts with an estimated value of $34,675 and that a total of ninety-five hours of labor, at a rate of $65.00 per hour, were expended in restoring Velocity to a usable condition. In total, the estimated value of the repairs made to Velocity was $40,850. After restoring Velocity back to working order, Michalski used the boat for personal recreation, as a rental boat, and to tow other boats on the Calumet River and Lake Michigan. Michalski was only able to use Velocity through the summer season of 2000.

In February 2001, Tim Geller, a material damage specialist for United who had been responsible for investigating Urbanski's theft claim, was contacted by the Portage Police Department regarding Velocity. In making arrangements to get Velocity back, United contacted conservation officers in Illinois. On February 3, 2001, the Illinois Department of Natural Resources seized Velocity for a short time and then returned it to the Riverside marina. Shortly thereafter, the Illinois State Police confiscated Velocity from the Riverside marina and turned it over to United.[15] Michalski made several demands to United for return of Velocity, but United refused.

On July 3, 2001, Michalski and Riverside filed a complaint alleging conversion, seeking replevin and to quiet title to Velocity, and/or seeking recovery in quantum meruit. A bench trial was conducted on February 20 and March 18, 2003. After taking the matter under advisement, the trial court entered its findings of fact and conclusions of law on August 28, 2003. Specifically, the court entered judgment as follows:

"17. Pursuant to Indiana Code 32–35–2–33, this Court ORDERS that [Michalski and Riverside] shall recover judgment against [United] in the sum of $65,000 that amount being the $47,000 market value Velocity was given by Mr. Eubanks and Michalski plus the $18,000 for fair rental value, together with Court Costs." Appendix at 67.

United now appeals.

◼ We begin by noting that it appears as though the trial court entered findings of fact and conclusions of law upon its own motion, as there is nothing in the record which suggests that either party made such a request. Upon review of an adverse judgment where the trial court sua sponte entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Humphries v. Ables*, 789 N.E.2d 1025, 1030 (Ind.Ct.App.2003). We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will not reweigh the evidence or determine the credibility of witnesses but rather consider only the evidence which supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

◼ When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover. *Id.* A

15. The Illinois Department of Natural Resources has since issued a title to Velocity to United.

general judgment standard applies to any issue upon which the trial court has not made a finding. *Id.* A general judgment may be affirmed upon any legal theory supported by the evidence. *Id.* A judgment in favor of the party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of the evidence. *Robinson v. Valladares,* 738 N.E.2d 278, 281 (Ind.Ct.App.2000).

■ Here, Michalski and Riverside brought the instant action to recover possession of Velocity. A replevin action is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention. *State Exchange Bank of Culver v. Teague,* 495 N.E.2d 262, 266 (Ind.Ct.App.1986). *See also* Ind.Code § 32–35–2–1 (Burns Code Ed. Repl.2002) (providing that where property is wrongfully taken or unlawfully detained from the owner or person claiming possession of the property, the owner or claimant may bring an action for the possession of the property). The trial court entered its judgment in favor of Michalski and Riverside pursuant to Indiana Code § 32–35–2–33 (Burns Code Ed. Repl.2002) which provides: "In an action to recover the possession of personal property, judgment for the plaintiff may be for: (1) the delivery of the property, or the value of the property in case delivery is not possible; and (2) damages for the detention of the property." Specifically, the trial court awarded Michalski and Riverside an amount for the value of Velocity and damages for lost rents resulting from United's detention thereof.

The dispositive issue in the case before us is whether the trial court erred in finding for Michalski and Riverside upon their action for replevin of Velocity. United asserts that the trial court's judgment is erroneous because Riverside and Michalski did not establish superior title to or a right to possession of Velocity. Specifically, United argues that the affirmation submitted with Riverside's application for title contained false statements, irregularities, and legal defects. United directs us to the Mechanic's Lien Affirmation wherein Ms. Nowakowski affirmed, on behalf of Riverside, that "[t]he ... storage furnished for [Velocity] was completed at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof in accordance with Illinois Compiled Statutes." Plaintiff's Exhibit 5. United asserts that Michalski and Ms. Nowakowski knew that Velocity was not being stored with the consent of its owner.

Before we address the merits of United's argument, we must first address Michalski and Riverside's claim that United has waived the argument for our review. In their brief, Michalski and Riverside argue that because United failed to give notice of its intent to rely upon the Illinois Labor and Storage (Small Amount) Act in compliance with the Uniform Judicial Notice of Foreign Law Act, Ind.Code 34–38–4 (Burns Code Ed. Repl.1998), United cannot now challenge the trial court's application of such law. We disagree.

■ In the complaint, Michalski and Riverside asserted that their claim of title was superior to United's. To establish such fact, Michalski and Riverside presented evidence to show that they had acquired a lien pursuant to Illinois law and that after complying with the statutory requirements for enforcing such lien, Riverside used such lien to obtain its title to Velocity. Although neither party specifically referred to the Illinois Labor and Storage Lien (Small Amount) Act, it is clear from the record before us that this is

the statutory scheme upon which Michalski and Riverside relied in asserting their lien which served as the basis for their subsequent claim of title to Velocity. Illinois law was thus the basis of Michalski and Riverside's claim for replevin. . United was thus under no obligation to provide notice to Michalski and Riverside of its intention to rely upon such law challenging Michalski and Riverside's claim. .Further, we note that although we will not usually decide the merits . of an appeal upon grounds not argued by the parties nor submitted to the trial court; we are obligated to ascertain the correct law applicable to the facts if to do otherwise would be to render a clearly erroneous appellate decision. *Dedelow v. Pucalik*, 801 N.E.2d 178, 184 (Ind.Ct.App.2003). Here, we must look to the Illinois Labor and Storage Lien (Small Amount) Act in reviewing United's challenge to Michalski and Riverside's claim of a lien and claim of superior title.

 Michalski and. Riverside also argue that United has waived any argument it has pursuant to the Illinois Labor and Storage Lien (Small Amount) Act because United failed to make such arguments to the trial court. A party generally waives appellate review of an issue or argument unless that party presented the issue or argument before the trial court. *Dedelow*, 801 N.E.2d at 183. However, we prefer to decide a case upon the merits whenever possible. *Id.* We have held that "[q]uestions within the issues and before the trial court are before the appellate court, and new arguments and authorities may with strict propriety be brought forward." *Id.* at 184 (quoting *Bielat v. Folta*, 141 Ind. App. 452, 454, 229 N.E.2d 474, 475 (1967)). Here, the issue of Riverside's lien pursuant to Illinois law, which served as the basis for its application of title to Velocity, was an issue before the court as part and

parcel of their claim for replevin. Indeed, the trial court found in its judgment that Riverside acquired its lien pursuant to "applicable Illinois law." App. at 66.

Further, after reviewing the record, we note that United's counsel cross-examined Ms. Nowakowski as to whether she inquired of Krzesinski about his ownership/possession of Velocity at the time he consented to its storage. United's counsel further questioned Ms. Nowakowski about the veracity of the affirmation she signed on behalf of Riverside in which she indicated that the storage of Velocity was "at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof." We can discern of no other reason why United's counsel would have challenged Ms. Nowakowski's testimony in this regard if not to cast doubt on Riverside and Michalski's claim of a lien under Illinois law and the use of that lien to obtain their purported superior title to Velocity. We therefore decline to hold that United waived the appellate argument that Michalski and Riverside did not establish superior title to Velocity because of false representations in an affirmation which was submitted with the. application for title to Velocity.

 Now, we turn back to United's claim that the trial court's judgment is erroneous because Riverside and Michalski did not establish superior title to or a right of possession to Velocity. In a replevin action the only issue which must necessarily be decided is the right to present possession. *Teague*, 495 N.E.2d at 266. In order for a plaintiff to recover in an action for replevin, he must prove his title or right to possession, that the property is unlawfully detained, and that the defendant wrongfully holds possession thereof. *Snyder v. Int'l Harvester Credit Corp.*, 147 Ind.App. 364, 368, 261 N.E.2d 71, 73 (1970). The plaintiff must prove his right

to possession on the strength of his own title, not merely the weakness of the defendant's title or right to possession. *Tucker v. Capital City Riggers,* 437 N.E.2d 1048, 1051 (Ind.Ct.App.1982). Only where the plaintiff has made a prima facie case of right to possession of the chattel sought, does the burden of going forward with the evidence to show a right of possession rest on the defendant. *Warner v. Warner,* 104 Ind.App. 252, 257–58, 10 N.E.2d 773, 775–76 (1937).

In asserting a claim for replevin, Michalski and Riverside maintained that their title to Velocity was superior to United's claim and that United was improperly detaining Velocity. In its judgment the trial court found that Riverside had acquired a storage lien after Velocity had been stored at its marina for more than eighteen months without payment. The court, however, did not make any specific factual findings with regard to Michalski and Riverside's compliance with Illinois law in obtaining the lien. The court then found that Riverside acquired title to Velocity after complying with "applicable Illinois law" for enforcing its storage lien and that title to Velocity was later assigned from Riverside to Michalski. As we have noted above, the "applicable Illinois law" under which Riverside and Michalski claimed a lien, which later served as a basis for acquisition of title and their claim of a right to possession of Velocity, is the Illinois Labor and Storage Lien (Small Amount) Act.

Under that Act, in order for a storage lien to be obtained, Velocity had to be stored "at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof." 770 Ill. Comp. Stat. 50/1. The Act further provides the manner in which the lien may be enforced, specifically providing for notice and a commercially reasonable public or private sale. 770 Ill. Comp. Stat. 50/2–50/4. In establishing title and right of possession, Michalski and Riverside presented evidence showing compliance with the notice and sale provisions of the Act, including an affirmation signed by an employee of Riverside in which it was also affirmed that Velocity's storage was "at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof."

In *Estate of Downs v. Webster,* 307 Ill. App.3d 65, 240 Ill.Dec. 309, 716 N.E.2d 1256 (1999), the Appellate Court of Illinois considered a claim of a lien pursuant to the Self–Storage Facility Act. There, the former executor of the estate entered into a lease with a storage facility for the storage of property belonging to the estate. The new executor of the estate learned of the storage of estate property and filed an action in replevin against the owner of the storage facility asserting that the former executor had no authority to enter into the lease. The trial court found that the storage facility acquired a lien against the estate property pursuant to the Self–Storage Facility Act. Upon appeal, the court, in analyzing that act, noted that no exception was made for property wrongfully placed in a storage facility; rather, the court found that the language of the statute was quite broad in that it applied to all personal property placed in storage. *Id.* at 1259. In further support of its position, the court compared that act with language found in the Labor and Storage Lien Act and the Labor and Storage Lien (Small Amount) Act and noted that those two acts contained qualifying language as to how a lien could be acquired against stored property. *Id.* at 1260. Specifically, the court noted that under the language of the labor and storage lien acts, the person providing storage must have legal authority over the property as a condition precedent to imposition of a lien. *Id.* In so noting, the court

was specifically referring to the restrictive language which provides that the storage must be provided "at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof...." *Id.*

In *Kunde v. Biddle,* 41 Ill.App.3d 223, 353 N.E.2d 410 (Ill.App.Ct.1976), the court considered a towing company's claim of a lien under the Labor and Storage Lien Act. At the request of the owner of a private parking lot, the towing company removed cars which were wrongfully parked in the lot. The towing company refused to relinquish the cars to their owners until the owners paid the towing and storage fees, claiming that it had acquired a lien against the vehicles under the Labor and Storage Lien Act. In asserting his right to the liens, the owner of the towing company claimed that he expended labor and storage at the request of the lawful possessor of the vehicles, i.e. the owners of the private parking lot on which the cars were wrongfully parked. The court concluded that to say that the parking lot owners were "lawful possessors" was a strained interpretation and application of statutory lien provisions. *Id.* at 413. The court held that the parking lot owners could not be considered agents of the owners of the cars. *Id.* The court noted that a mere possessor has no authority to create a lien against an automobile without the owner's consent. *Id.* Thus, the court concluded that the towing company did not acquire a lien under the storage lien statute because the storage was not provided "at the request of or with the consent of the owner, authorized agent of the owner, or lawful possessor thereof." *Id.*

█ Under the authority of *Webster* and *Kunde,* it is clear that Illinois courts have given effect to the restrictive language in the Illinois Labor and Storage Lien (Small Amount) Act, which requires that in order for a lien to be obtained, the storage of property must be provided "at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof." Here, it is undisputed that Velocity was dropped off for storage at the Riverside marina by Krzesinski and that Krzesinski was not the owner of Velocity. The question before us then becomes whether there was any evidence from which the trial court could have concluded by a preponderance of the evidence that Krzesinski was the authorized agent of the owner, i.e. Urbanski, or the lawful possessor of Velocity when he consented to Velocity's storage at the Riverside marina.

At the bench trial, Riverside and Michalski presented evidence from which they sought the inference that the "Bob" who delivered Velocity into Krzesinski's possession was Robert Urbanski, Jr., Urbanski's son. Indeed, the trial court made such inference, for in its judgment, the court found that Robert Urbanski, Jr., was the "Bob" who contacted Krzesinski and later dropped Velocity off at Krzesinski's parents' home, never to return and claim the boat. In their brief, Michalski and Riverside argue that there was no evidence that Robert Urbanski, Jr., was not an authorized agent of Urbanski. However, there also was no evidence presented from which the trial court could conclude that Urbanski, Jr., was the authorized agent of Urbanski. The simple fact that Urbanski, Jr., was Urbanski's son is not enough from which a reasonable inference can be drawn to establish that Urbanski, Jr., was acting as Urbanski's authorized agent. Because there was no evidence that Urbanski, Jr., was acting as an authorized agent of Urbanski, there is nothing from which it could be concluded that Krzesinski, through Urbanski, Jr., was acting as an authorized agent of Urbanski. The bur-

den was upon Michalski and Riverside to prove that Krzesinski, through Urbanski, Jr., was acting as an authorized agent of Urbanski, the registered owner of Velocity, when Krzesinski dropped the boat off for storage at the Riverside marina, as such establishes their claim to a valid lien and subsequent title to Velocity.

There was also no evidence from which the trial court could have concluded that Krzesinski was the lawful possessor of Velocity when he dropped it off at the Riverside marina. Again, the undisputed evidence is that "Bob," or as the trial court specifically found, Urbanski, Jr., delivered Velocity to Krzesinski. There was no evidence presented which showed that Urbanski, Jr., was the lawful possessor vis-à-vis Urbanski. Thus, Krzesinski cannot be said to be the lawful possessor through Urbanski, Jr.[16]

In short, Michalski and Riverside did not establish that Velocity was stored "at the request of or with the consent of its owner, the authorized agent of the owner, or the lawful possessor thereof." Thus, Riverside did not establish that it had acquired a valid lien against Velocity. In applying for a title to Velocity, inaccurate representations were made, i.e. that a valid lien had been acquired, to induce the State of Illinois to issue a new title to the boat to Riverside. Riverside and Michalski thus failed as a matter of law to establish a valid title to Velocity which is superior to United's. Further, Michalski and Riverside did not show that they have a right of possession to Velocity other than through the purported title, which we have concluded was not properly obtained. Therefore, we hold that the trial court erred in finding for Michalski and Riverside on their claim of replevin.[17]

The judgment of the trial court is reversed and remanded for further proceedings.

MAY, J., and VAIDIK, J., concur.

---

16. The parties do not argue and under the facts of this case we cannot discern any other theory under which it could be established that Krzesinski was the lawful possessor of Velocity when he dropped it off for storage at the Riverside marina.

17. This is not to say that Michalski and Riverside are without recourse. In their complaint, they also brought a claim for quantum meruit. However, because the trial court found for Michalski and Riverside upon their claim for replevin, the court did not reach the issue. We express no opinion upon the validity of Michalski and Riverside's claim for quantum meruit, but remand the case for consideration of such by the trial court.