

**FILED**

Nov 17 2016, 8:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS
SPERRO LLC D/B/A SPERRO
TOWING AND RECOVERY, FENNER
& ASSOCIATES LLC, AND BRIAN
FENNER

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Harley K. Means
John J. Petr
Steven E. Runyan
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sperro LLC d/b/a Sperro Towing and Recovery, Fenner & Associates LLC, Brian Fenner, and AMI Asset Management, Inc., | November 17, 2016 |
| *Appellants-Defendants,* | Court of Appeals Case No. 49A02-1601-PL-187 |
| and | Interlocutory Appeal from the Marion Superior Court |
| Indiana Bureau of Motor Vehicles, | The Honorable Thomas J. Carroll, Judge |
| *Declaratory Defendant,* | Trial Court Cause No. 49D06-1512-PL-40415 |
| v. | |
| Ford Motor Credit Company LLC, | |

*Appellee-Plaintiff*

**Crone, Judge.**

# Case Summary

[1] Sperro LLC d/b/a Sperro Towing and Recovery ("Sperro") is in the business of transporting and storing collateral. Sperro towed and stored certain vehicles that had been financed by Ford Motor Credit Company LLC ("FMCC"). Sperro sought to assert possessory mechanic's liens on the vehicles pursuant to Indiana Code Section 9-22-6-2 and sold the vehicles. FMCC filed a complaint against Sperro, Fenner & Associates LLC, and Brian Fenner (collectively "Appellants"), and AMI Asset Management, Inc. ("AMI"),[1] for civil conversion, replevin, tortious interference with a contractual relationship, and conspiracy to commit fraud. FMCC also filed a petition for a preliminary injunction. Following a hearing, the trial court issued a preliminary injunction granting FMCC prejudgment possession of specific vehicles in Sperro's and AMI's possession, ordering Appellants to turn over to FMCC any known or not yet identified FMCC-financed vehicles that may be in Appellants' possession, and enjoining Appellants from taking or maintaining possession of any vehicle on which FMCC is the lienholder.

---

[1] AMI and the Indiana Bureau of Motor Vehicles did not file briefs in this appeal, but Indiana Appellate Rule 17(A) provides that "[a] party of record in the trial court or Administrative Agency shall be a party on appeal."

Appellants now bring this interlocutory appeal of the trial court's entry of preliminary injunction. Appellants challenge the trial court's conclusions that they did not comply with Indiana Code Section 9-22-6-2 and that they intentionally induced the vehicles' purchasers to breach their retail installment contracts with FMCC or proceeded with reckless disregard of their contractual relationship. We conclude that the trial court's conclusions are not clearly erroneous, and therefore we affirm.

## Facts and Procedural History

The following facts are undisputed.[2] Brian Fenner is the sole owner and employee of Sperro, an Indiana limited liability company established in February 2015, which is in the business of transporting and storing collateral. Sperro's principal office address, as provided in its articles of organization, is P.O. Box 163 in Camby, Indiana, 46113. The 46113 zip code covers parts of Marion, Morgan, and Hendricks Counties. Fenner testified that P.O. Box 163 is located in Hendricks County. However, Sperro transports vehicles to and stores them at 2534 Bluff Road and 2334 South California Street in Indianapolis, Marion County (collectively "the Storage Yards"). Also, Sperro advertises that its lien auction sales are held at the Bluff Road property. Fenner & Associates LLC is an Indiana limited liability company with its articles of incorporation signed by Fenner, and its principal office address is the Bluff Road address.

---

[2] Appellants challenge only one of the trial court's findings of fact, which we discuss in Section 1.

[4] Fenner was a former employee of AMI, a Wisconsin corporation registered to do business in Indiana. Dennis Birkley is the sole shareholder of AMI. Fenner and Birkley both worked as repossession/recovery agents and have known each other for over twenty years. Birkley was Fenner's mentor at one time.

[5] FMCC financed some of the vehicles that Sperro transported to and stored in the Storage Yards. Seven of these vehicles ("the Vehicles") are the subject of this lawsuit. The Vehicles' purchasers ("the Borrowers") financed their vehicles through loans from FMCC pursuant to retail installment contracts ("Installment Contracts"). The Borrowers have contractually defaulted on their payments due to FMCC under the Installment Contracts. The Installment Contracts granted to FMCC a continuing security interest in the Vehicles, and FMCC perfected its security interest in each of the Vehicles by placing its liens on the certificates of title. The Installment Contracts required the Borrowers to keep the Vehicles free from the claims of others; not expose the Vehicles to misuse, seizure, confiscation, or involuntary transfer; and not sell, rent, lease, or transfer any interest in the Vehicles or the Installment Contracts without FMCC's written permission. Plaintiff's Ex. 28(d). Upon a Borrower's default under the Installment Contract, FMCC was entitled to demand the full amount owed and take possession of the Vehicle. However, FMCC was not contacted by the Borrowers or Sperro prior to transportation of the Vehicles to the Storage Yards and did not consent to Sperro taking possession of and transporting the Vehicles hundreds of miles from their surrender points. Sperro transported the

Vehicles from New Mexico, California, Louisiana, and Arizona to its Storage Yards in Indianapolis.

[6] Fenner operated Sperro according to a certain business plan that the trial court referred to as "the Sperro Plan." Appellants' App. at 27. Under the Sperro Plan, Sperro established contacts with numerous consumer bankruptcy attorneys throughout the United States, who would notify Sperro when a prospective bankruptcy client had a financed vehicle that he or she could no longer afford to make the payments on. Although such vehicles would normally be voluntarily surrendered to the secured creditor, Sperro would offer to pay the client's bankruptcy legal fees in exchange for the client's agreement to have the vehicle towed to Indiana and stored pursuant to a Transporting and Storage Authorization Agreement ("TSAA"). The TSAA authorized Sperro to make the following charges: $1.85 per mile to transport a vehicle to the Bluff Road property; a $75 loading fee and a $75 unloading fee; a $45 per day outdoor storage fee; a $250 preventive maintenance care package; up to an $800 fee if a lien sale proceeding commenced; and a $175 administrative fee if the owner defaulted under the TSAA. Plaintiff's Ex. 36. The TSAA also provided that the storage fees began to accrue on the date that the bankruptcy client entered into the agreement and were due in arrears on the first day of each month. *Id.* Upon declaring a default under the TSAA, Sperro would issue a notification of lien to the owner of the vehicle and the lienholder, stating that if the demanded amount was not paid within fifteen days, the vehicle would be considered abandoned and any lien or interest in the vehicle would be forfeited.

By signing the TSAA, the client acknowledged that Sperro had a security interest in the vehicle and a "right to claim a lien to recover transport/storage and other charges incurred." *Id.* The Borrowers' execution of the TSAAs and surrender of the Vehicles to Sperro constituted a default on their promises in the Installment Contracts to keep the Vehicles free from the claims of any others, not to expose the Vehicles to seizure, and not to transfer any interest in the Vehicles without FMCC's written permission.

[7]     Since Fenner implemented the Sperro Plan, approximately 40% of the vehicles towed by Sperro to Indianapolis have been redeemed by lienholders who paid the towing and storage fees. The people who surrendered vehicles to Sperro pursuant to TSAAs have rarely, if ever, picked up or redeemed a vehicle. Sperro has sold the remaining vehicles at "purported lien auctions" for the alleged towing and storage fees. Appellants' App. at 14. An auctioneer has never been present at any of the lien auctions. Although Sperro purportedly held the lien auctions at the Bluff Road property in Marion County, Sperro advertised the lien auctions in the *Hendricks County Flyer*, which is not in general circulation in Marion County. Since January 2015, the Indiana Bureau of Motor Vehicles ("BMV") has issued forty-nine new certificates of title for vehicles sold at Sperro's purported lien auctions, and of these, forty-three were sold to AMI, three were sold to Sperro, two were sold to Fenner, and one was sold to William Boger, Fenner's neighbor.

[8]     On August 9, 2015, Sperro took possession of three of the Vehicles ("the Group 1 Vehicles") that are the subject of this lawsuit. On August 26 and 27, 2015,

Sperro sent a notice of lien for each of these Vehicles to FMCC. The notices of lien failed to correctly identify the proper statutory authority for Sperro's asserted liens. On August 29, 2015, Sperro published a notice of sale for the Group 1 Vehicles in the *Hendricks County Flyer*. The notice of sale was published within thirty days after Sperro took possession of the Group 1 Vehicles. On September 14 and 15, 2015, AMI purchased the Group 1 Vehicles. On November 9, 2015, Sperro sent notice of lien correction statements to FMCC, asserting possessory mechanic's liens on the Group 1 Vehicles under Indiana Code Section 9-22-6-1.

[9] Also in August and September 2015, Sperro took possession of three more Vehicles ("the Group 2 Vehicles"). On August 24, 2015, Sperro took possession of one of these Vehicles. On September 13, 2015, Sperro sent FMCC a notice of lien. On October 1, 2015, Sperro published a notice of sale for it in the *Hendricks County Flyer*, and on October 9, 2015, Sperro sold it to Collateral Services of Indiana LLC ("CSI"). Fenner is the sole member of CSI. On August 24 and September 30, 2015, Sperro purchased the other two Group 2 Vehicles. On November 9, 2015, Sperro sent notices of lien to FMCC. On November 14, 2015, Sperro published notices of sale in the *Hendricks County Flyer*, and on November 28, 2015, Sperro purchased them. The sales of all the Group 2 Vehicles occurred less than fifteen days after the notices of sale were published. Lastly, Sperro took possession of the seventh Vehicle, a Fiesta, on October 7, 2015. Sperro did not send notice to FMCC of its intent to hold a mechanic's lien and has not sold this Vehicle.

[10] As of December 22, 2015, FMCC was owed $159,141 under the Installment Contracts for the Vehicles. The estimated wholesale value of the Vehicles is $95,000. The towing and storage liens on the Vehicles totaled $33,799.50, or approximately $4800 per vehicle. The usual and customary cost of a voluntary surrender in the towing industry is less than $300.

[11] FMCC wrote to the BMV to request that it stop and withhold any title transfer to Sperro or any alleged lien sale purchase of the Vehicles ("the Stop Title Requests"). FMCC sent copies of the Stop Title Requests, along with copies of the Installment Contracts, to Sperro and Fenner prior to the alleged sales of the Group 2 Vehicles.[3] FMCC made written demand for the return of the Vehicles from Sperro and Fenner, which was ignored or refused.

[12] As a result of the Stop Title Requests, and other irregularities in the title applications submitted by Sperro, Fenner, AMI, and CSI, the BMV decided to apply a heightened degree of scrutiny based on the potential for fraud. Applying this additional scrutiny, the BMV rejected approximately forty title applications submitted by AMI for vehicles that it had purchased from Sperro.

[13] Carla Resler, a legal assistant from the office of FMCC's counsel, attempted to monitor one of Sperro's lien auctions. Sperro advertised a lien auction in the *Hendricks County Flyer* to be held on December 4, 2015, at 6:30 a.m. at the Bluff

---

[3] FMCC asserts that it sent the Stop Title Requests to Sperro prior to the sale of all the Vehicles, but the trial court found that FMCC sent the Stop Title Requests prior to the sale of only the Group 2 Vehicles. Appellants' App. at 17 (finding 50).

Road property. At the specified time, Resler went to the Bluff Road property, but no lights were on at the sale site, and Fenner was not present. In fact, Resler was the only person there. She then went to the California Street property, but no one was there either. Nevertheless, Sperro submitted title applications to the BMV for twelve vehicles that it allegedly purchased for cash at the December 4, 2015 lien auction.

[14] In December 2015, FMCC filed a complaint for damages, possession, temporary restraining order, and preliminary and permanent injunctions against Appellants and naming the BMV as a declaratory defendant. FMCC asserted causes of action against Appellants based on conversion, replevin, tortious interference with a contract, and conspiracy to commit fraud. The same day, FMCC also filed a petition for temporary restraining order and preliminary and permanent injunctions. The trial court held a hearing on FMCC's petition, at which FMCC submitted thirty-six exhibits and called four witnesses, and Sperro submitted ten exhibits and called two witnesses.

[15] In January 2016, the trial court issued findings of fact, conclusions thereon, and entry of preliminary injunction and prejudgment possession ("Entry of Preliminary Injunction") in favor of FMCC. The findings of fact provide that since June 2015, five additional complaints have been filed and are being litigated in Marion Superior Court against Fenner, Sperro, CSI, and AMI based on facts similar to those set forth above and in FMCC's complaint ("the Sperro Plan Litigation"). The conclusions provide as follows:

6.     Upon a request by a party for prejudgment possession, "the court shall consider the showing made by the parties appearing and make a preliminary determination which party, with reasonable probability, is entitled to possession, use, and disposition of the property, pending final adjudication of the claims of the parties." Ind. Code § 32-35-2-14.

7.     FMCC is the superior, proper and first lien holder in the Vehicles, perfected by FMCC's liens noted on the certificates of titles, with priority over any alleged lien or right asserted by Sperro, Fenner, CSI and AMI.

8.     Accordingly, in determining whether FMCC is entitled to prejudgment possession, the issue is whether there is a reasonable probability that FMCC's interests in the Vehicles by virtue of its perfected liens noted on the certificates of title are superior to Sperro's claimed interests, if any, by virtue of alleged statutory possessory liens and sales.

….

10.     A vehicle subject to a possessory mechanic's lien cannot be advertised for sale sooner than thirty (30) days after the date the vehicle is left in, or comes into, the possession of the claimant and thereafter cannot be sold earlier than fifteen (15) days after the date the advertisement is published. Ind. Code § 9-22-6-2. Accordingly, there is a minimum time period of forty-five (45) days before a vehicle subject to a possessory lien can legally be sold.

….

12.     Sperro advertised the sales of the [Group 1 Vehicles] less than thirty (30) days after the date the three vehicles came into

the possession of Sperro. Accordingly, the alleged lien sales relating to the [Group 1 Vehicles] to AMI are invalid.

13. Sperro cited to inapplicable Indiana Code sections in the Notices relating to the [Group 1 Vehicles] and acknowledged these misstatements in the Corrected Notices. Accordingly, the lien sales relating to the [Group 1 Vehicles] to AMI are invalid for the additional reason that the Corrected Notices were not transmitted to FMCC prior to sale to AMI.

14. The mechanic's lien sales relating to the [Group 2 Vehicles] were less than (15) days after the date the advertisements were placed in the Hendricks County Flyer. Accordingly, the alleged lien sales purporting to sell the [Group 2 Vehicles] to Sperro were invalid.

15. The mechanic's lien sales relating to the Vehicles purportedly sold to AMI, Sperro and CSI were solely advertised in the [Hendricks County] Flyer, a newspaper that does not generally circulate in Indianapolis, Marion County, Indiana, the city where Sperro is located. Accordingly, the alleged lien sales relating to the Vehicles are invalid.

….

19. There is a substantial risk that [Appellants] will seek to sell or transfer title to the Vehicles or move them from their current locations in Indianapolis, Indiana and Mukwonago, Wisconsin in an effort to hide them, prior to a determination of the merits of this controversy, which will cause irreparable harm to FMCC.

….

21.    [Appellants'] attempted sales and transfers of the titles to the Vehicles, possible movement of the Vehicles, and Sperro's and Fenner's likely ongoing solicitation and transportation of additional vehicles in which FMCC maintains liens justifies emergency action by this court.

22.    FMCC's remedies at law are inadequate.

23.    The threatened injury [Appellants'] continued conduct will cause to FMCC outweighs any harm to [Appellants] from being preliminarily enjoined from selling or transferring title to the Vehicles, moving the Vehicles, and from taking possession of and transporting additional vehicles in which FMCC holds liens from throughout the country for the obvious purpose of obtaining and enforcing towing, storage and mechanic's liens under the dubious business model called "the Sperro Plan", until this Court enters a final judgment on the legality and validity of [Appellants'] conduct and alleged liens or ownership of the Vehicles.

24.    The alleged lien auctions did not comply with Indiana Code § 9-22-6-2.

25.    FMCC has a reasonable likelihood of success on the merits at trial by having established a prima facie case that Sperro, Fenner, CSI and AMI are not in lawful possession of the Vehicles.

26.    Sperro, Fenner, and AMI have exerted unauthorized dominion and control over the Vehicles in contravention of FMCC's first priority liens, by among other things, refusing to release the Vehicles to FMCC despite demand, demanding seemingly exorbitant transport and storage charges of questionable economic justification, and attempting to sell and re-title the Vehicles.

....

29.    Sperro and Fenner had or should have had general knowledge of the existence of retail installment contracts between FMCC and Borrowers and the general provisions therein.  ....

30.    The TSAA[s] between Sperro and the Borrowers, by their very terms, violate the Borrowers' Installment Contracts with FMCC.

31.    Sperro and Fenner have intentionally induced the breach of the Installment Contracts between Borrowers and FMCC, or proceeded with reckless disregard to the contractual relationship between Borrowers and FMCC.

....

33.    The public interest is not disserved by granting a preliminary injunction.  To the contrary, the public interest is likely served by granting the requested injunctive relief due to the very similar allegations and causes of actions asserted in the Sperro Plan Litigation; also that the Declaratory Defendant [the BMV] has no objection to the prayed for relief.

Appellants' App. at 23-28.

[16]    Based on the findings of fact and conclusions thereon, the Entry of Preliminary Injunction (1) orders Sperro and AMI to immediately surrender the Vehicles in their possession to FMCC; (2) orders FMCC to post a surety bond for the protection of Sperro and AMI in the amount of $101,000; (3) enjoins the BMV from processing any application by the Appellants or AMI for issuance or

transfer of a title related to the Vehicles; (4) authorizes the BMV to issue certificates of title to FMCC for the Vehicles upon submission of the appropriate title application documents; (5) authorizes FMCC to sell the Vehicles in mitigation of the remaining indebtedness relating to them; (6) orders Appellants, AMI, and any entity with which Fenner is an owner, officer, agent, or employee to immediately turn over to FMCC any known or not yet identified FMCC-financed vehicles that may be in their possession or come into their possession; and (7) enjoins Appellants, AMI, and any entity with which Fenner is an owner, officer, agent, or employee from taking or maintaining possession of any vehicle in which FMCC is the lienholder. *Id*. at 29-31. This appeal ensued.[4]

# Discussion and Decision

## Standard of Review

[17] The trial court is required to issue special findings of fact and conclusions thereon when determining whether to grant a preliminary injunction. *Thornton-Tomasetti Eng'rs v. Indianapolis-Marion Cnty. Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006); Ind. Trial Rule 52(A). Here, the findings and conclusions

---

[4] Appellants' and FMCC's appendices do not comply with the Indiana Rules of Appellate Procedure because they contain exhibits, which are considered part of the transcript and therefore are not to be reproduced in an appendix pursuant to Appellant Rules 29 and 50(F). In addition, FMCC's appellee's brief is not in compliance with our rules because the citations are placed in footnotes rather than in the text of the document. Ind. Appellate Rule 22 (requiring adherence to Bluebook rules); *see* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. B1, at 3-4 (Columbia Law Review Ass'n et al. eds., 20th ed. 2016) ("In non-academic legal documents, such as briefs and opinions, citations generally appear within the text of the document directly after the propositions they support.").

also apply to the trial court's grant of prejudgment possession of the Vehicles to FMCC. We review the special findings and conclusions for clear error. Ind. Trial Rule 52(A).

> Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Orndorff v. Ind. Bureau of Motor Vehicles*, 982 N.E.2d 312, 319 (Ind. Ct. App. 2012) (quoting *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011)), *trans. denied* (2013).

## Section 1 – The trial court did not err in awarding prejudgment possession of the Vehicles to FMCC.

[18] Appellants first challenge the trial court's decision to grant prejudgment possession of the Vehicles to FMCC. Prejudgment possession of the Vehicles is governed by Indiana's replevin statute, Indiana Code Chapter 32-35-2. "A replevin action is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention." *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1066 (Ind. Ct. App. 2004). Indiana Code Section 32-35-2-1 provides that if personal goods are "wrongfully taken or unlawfully detained from the owner or person claiming possession of the property," an action for

the possession of property may be brought by the owner or claimant. To recover in a replevin action, the plaintiff "must prove his title or right to possession, that the property is unlawfully detained, and that the defendant wrongfully holds possession thereof." *Michalski*, 814 N.E.2d at 1066 (citing *Snyder v. Int'l Harvester Credit Corp.*, 147 Ind. App. 364, 368, 261 N.E.2d 71, 73 (1970)). When a party requests prejudgment possession in an action for replevin, the trial court is required to "(1) consider the showing made by the parties appearing; and (2) make a preliminary determination which party, with reasonable probability, is entitled to possession, use, and disposition of the property, pending final adjudication of the claims of the parties." Ind. Code § 32-35-2-14. If the trial court determines "that a prejudgment order of possession in the plaintiff's favor should issue, the court shall issue the order." Ind. Code § 32-35-2-15.

[19] Appellants concede that FMCC has perfected first liens on the Vehicles by virtue of the Installment Contracts and the notices of lien placed on the Vehicles' certificates of title. However, Appellants contend that the trial court erred in concluding that they failed to comply with Indiana Code Section 9-22-6-2, the possessory mechanic's lien statute ("the Statute"). Specifically, they contend that the trial court misinterpreted the Statute. In addressing their argument, we are required to apply our rules of statutory interpretation:

> A question of statutory interpretation is a matter of law. In such interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or

the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

*A.J. v. Logansport State Hosp.*, 956 N.E.2d 96, 104-05 (Ind. Ct. App. 2011) (quoting *In re J.J.*, 912 N.E.2d 909, 910 (Ind. Ct. App. 2009)).[5]

[20] "The possessory mechanic's lien statute is meant to ensure that a garage mechanic/repairman is reimbursed for the reasonable amount of the repairs performed at the request of the vehicle's owner." *Banks v. Jamison*, 12 N.E.3d 968, 983 (Ind. Ct. App. 2014).[6] "A possessory lien on a motor vehicle is

---

[5] The parties and the trial court state that "possessory liens" are in derogation of common law and therefore are strictly construed. Appellants' App. at 24; Appellants' Br. at 20-21; Appellee's Br. at 23. In support of this principle, they cite *Deluxe Sheet Metal, Inc. v. Plymouth Plastics, Inc.*, 555 N.E.2d 1296, 1298 (Ind. Ct. App. 1990), *trans. denied* (1991), *cert. denied*. However, the *Deluxe* court did not state that possessory liens are in derogation of common law; it stated that "the mechanic's lien statutes are in derogation of common law." *Id.* The *Deluxe* court was discussing the construction of the statute governing *nonpossessory* mechanic's liens. Possessory mechanic's liens and nonpossessory mechanic's liens are different and are governed by different statutes. The possessory mechanic's "lien was long recognized at common law," and "[b]y contrast the second species of mechanic's lien is known as non-possessory because it dispenses with the common law requirement of possession." *Jones v. Harner*, 684 N.E.2d 560, 562 (Ind. Ct. App. 1997). The *Jones* court explained that the requirement "of the filing of a notice of intention to hold mechanic's lien and the absence of a requirement that the person remain in possession of the vehicle represent a significant departure from the common law. As such the notice provision must be strictly construed." *Id.* at 563. Accordingly, we conclude that the strict construction language in *Deluxe* does not apply to the possessory mechanic's lien statute.

[6] Appellants do not challenge the trial court's conclusion that the Sperro Plan does not serve the purpose of the Statute. *See* Appellants' App. at 29 ("[N]one of the services Sperro claims it performed conferred any real benefit to the Borrowers, and certainly not to FMCC.").

perfected by retention of possession of the vehicle by the person asserting the lien." *Gangloff Indus., Inc. v. Generic Fin. & Leasing, Corp.*, 907 N.E.2d 1059, 1066 (Ind. Ct. App. 2009). "A possessory mechanic's lien is foreclosed 'by sale without judicial process [and up]on notice to the owner.'" *Banks*, 12 N.E.3d at 979 (quoting *Hendrickson & Sons Motor Co. v. Osha*, 165 Ind. App. 185, 202, 331 N.E.2d 743, 754 (1975)).

[21]   The version of the Statute in effect from January 1, 2015, to June 30, 2016, the time period during which Sperro took possession of the Vehicles, provides as follows:

> (a) An individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle, trailer, semitrailer, or recreational vehicle at the request of the person that owns the vehicle has a mechanic's lien on the vehicle for the reasonable value of the charges for the labor, materials, storage, or repairs.
>
> (b) An individual, a firm, a partnership, a limited liability company, or a corporation that provides towing services for a motor vehicle, trailer, semitrailer, or recreational vehicle at the request of the person that owns the motor vehicle, trailer, semitrailer, or recreational vehicle has a mechanic's lien on the vehicle for the reasonable value of the charges for the towing services and other related costs.
>
> (c) *If*:
>
>> (1) *the charges made under subsection (a) or (b) are not paid*; *and*

*(2) the motor vehicle, trailer, semitrailer, or recreational vehicle is not claimed;*

*not later than thirty (30) days after the date on which the vehicle is left in or comes into the possession of* the individual, firm, limited liability company, or corporation for repairs, storage, towing, or the furnishing of materials, the individual, firm, limited liability company, or corporation may advertise the vehicle for sale. *The vehicle may not be sold earlier than fifteen (15) days after the date the advertisement required by subsection (d) has been placed* or fifteen (15) days after notice required by subsection (e) has been sent, whichever is later.

(d) Before a vehicle may be sold under subsection (c), *an advertisement must be placed in a newspaper that is printed in English and of general circulation in the city or town in which the lienholder's place of business is located*. If the lienholder is located outside the corporate limits of a city or a town, the advertisement must be placed in a newspaper of general circulation in the county in which the place of business of the lienholder is located. The advertisement must contain at least the following information:

>   (1) A description of the vehicle, including make, type, and manufacturer's identification number.

>   (2) The amount of the unpaid charges.

>   (3) The time, place, and date of the sale.

(e) In addition to the advertisement required under subsection (d), the person that holds the mechanic's lien must notify the person that owns the vehicle and any other person that holds a lien of record at the person's last known address by certified mail, return receipt requested, that the vehicle will be sold at public

> auction on a specified date to satisfy the mechanic's lien imposed
> by this section.

(Emphases added.)

[22] Here, the trial court concluded that Sperro failed to satisfy the statutory requirements by advertising the sales of the Group I Vehicles within thirty days after the date they came into Sperro's possession. The trial court concluded that Section 9-22-6-2(c) requires that vehicles not be advertised for sale until thirty days after the vehicle was left in or came into possession of the mechanic. Appellants disagree with the trial court's reading of subsection (c), arguing that it states that "a vehicle may be advertised 'not later than thirty days after the date on which the vehicle is left in or comes into the possession of the lienholder.'" Appellants' Br. at 19 (emphasis and brackets omitted). They assert that they complied with subsection (c) because the Group 1 Vehicles were advertised within thirty days of the date they came into Sperro's possession.

[23] We disagree with Appellants' selective reading of subsection (c). Reading the subsection in its entirety reveals that it provides that *if* the charges made under subsection (a) or (b) *are not paid and* the vehicle *is not claimed not later than thirty days* after the date the vehicle is left in or comes into the possession of the mechanic, the mechanic may advertise the vehicle for sale.[7] Thus, after the

---

[7] The current version of Section 9-22-6-2(c) supports our reading. It now provides,

> (c) A person that has a mechanic's lien on a vehicle under subsection (a) or (b) may advertise the vehicle for sale if:

vehicle comes into possession of the mechanic, the mechanic must wait thirty days to allow an opportunity for the charges to be paid or the vehicle to be claimed before advertising the vehicle for sale. Appellants' reading would have the absurd result of permitting a mechanic to advertise the sale of a vehicle just one day after the vehicle was left in or came into his or her possession regardless of whether the owner had defaulted and without allowing the owner an opportunity to claim the vehicle. Therefore, we conclude that the trial court did not err in interpreting Section 9-22-6-2(c) and concluding that the publication of the notices of sale of the Group 1 Vehicles was not in compliance with the Statute. Accordingly, the trial court did not err in concluding that the sales of the Group 1 Vehicles were invalid.[8]

[24] As for the Group 2 Vehicles, the trial court concluded that the mechanic's lien sales were invalid because the sales occurred less than fifteen days after the date that the notices of sale were published. Appellants claim that two of these sales occurred at least fifteen days after the sale date was published. Appellants' Br. at 20. They are simply mistaken. The notice of sale of one of the Group 2 Vehicles was published on October 1, 2015, and that vehicle was sold on

---

(1) the charges made under subsection (a) or (b) are not paid; and

(2) the vehicle is not claimed;

within thirty (30) days after the date on which the vehicle is left in or comes into the possession of the person for repairs, storage, towing, or the furnishing of materials. The vehicle may not be sold until the later of fifteen (15) days after the date the advertisement required by subsection (d) has been placed or fifteen (15) days after notice required by subsection (e) has been sent.

[8] We observe that the sale of the Group 1 Vehicles was also invalid because the sales occurred before FMCC received corrected notices of liens. Appellants' App. at 25 (Conclusion 13).

October 9, 2015. The other two notices of sale were published on November 14, 2015, and those vehicles were sold on November 28, 2015. Accordingly, the trial court did not err in concluding that the sales of the Group 2 Vehicles did not comply with Section 9-22-6-2(c) and therefore were invalid.[9]

[25] Appellants also assert that the trial court erred in concluding that the sales of the Vehicles were invalid because Sperro's publication of the notices of sale in the *Hendricks County Flyer* did not comply with Section 9-22-6-2(d). Subsection (d) states that the advertisement for sale must be placed in a newspaper of general circulation in the city or town in which the mechanic's "place of business" is located. The trial court concluded that the *Hendricks County Flyer* was not in general circulation in Indianapolis, Marion County, where Sperro's "place of business" is located. The sole finding of fact Appellants challenge is that Sperro's "place of business" is located in Indianapolis, Marion County. Appellants contend that the "place of business" would reasonably include the address registered with the secretary of state for the principal office, and Sperro's principal office as provided in its articles of incorporation is P.O. Box 163, Camby, Indiana, 46113. Fenner testified that this P.O. Box is in Hendricks County.

[26] Although Title 9 of the Indiana Code, does not define the term "place of business," under the facts of this case, we can say with certainty that Sperro's

---

[9] Also, the sale of one of the Group 2 Vehicles is invalid for the additional reason that Sperro sent the notice of lien to FMCC within thirty days of the date the vehicle came into Sperro's possession: Sperro took possession of that vehicle on August 24, 2015, and sent FMCC a notice of lien on September 13, 2015.

P.O. Box is merely a mailing address and not a place of business. *Cf.* Ind. Code § 9-13-2-50 ("'Established place of business' means a permanent enclosed building or structure owned or leased for the purpose of offering for sale, trading, and selling motor vehicles. The term does not include a residence, tent, temporary stand, or permanent quarters temporarily occupied."). Appellants cite to no evidence in the record that Sperro conducted any of its business at P.O. Box 163 in Camby. It is undisputed that the Vehicles were towed to and stored at the Storage Yards and that the purported lien auctions were advertised as being held in Indianapolis, Marion County. When Fenner was asked at his deposition which county Sperro does business in, he answered, "Marion [County]." Appellee's App. Vol. III at 126. Accordingly, the trial court did not err in concluding that Sperro's place of business was located in Indianapolis, Marion County, that Sperro's advertisements in the *Hendricks County Flyer* did not comply with Section 9-22-6-2(d), and that the sales of the Vehicles were invalid for this reason. *See Mobile Home Mgmt. Indiana, LLC v. Avon Vill. MHP, LLC*, 17 N.E.3d 275, 281 (Ind. Ct. App. 2014) (concluding that auction was invalid because of failure to comply with notice requirements for sale of mobile homes), *trans. denied* (2015). Because Appellants failed to comply with the Statute, there is a reasonable probability that FMCC is entitled to possession of the Vehicles by virtue of its perfected first liens on the Vehicles, and therefore the trial court did not err in granting prejudgment possession of the Vehicles to FMCC.

# Section 2 – The trial court did not err in granting a preliminary injunction.

[27] Appellants also claim that the trial court erred in ordering them to surrender to FMCC any known or not yet identified FMCC-financed vehicle in their possession and enjoining them from taking or maintaining possession of any vehicle in which FMCC is a lienholder. "The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of our review is limited to deciding whether there has been a clear abuse of discretion." *City of Gary v. Mitchell*, 843 N.E.2d 929, 932-33 (Ind. Ct. App. 2006). "Preliminary injunctions are generally used to preserve the status quo as it existed before a controversy, pending a full determination on the merits of the dispute." *Stoffel v. Daniels*, 908 N.E.2d 1260, 1272 (Ind. Ct. App. 2009). To obtain a preliminary injunction, the moving party typically must show by a preponderance of the evidence that

> (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved.

*Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003).

[28] Appellants apparently concede that FMCC carried its burden with respect to factors (1), (3), and (4) because they do not discuss these factors in their brief. Therefore, we will not address them. Appellants' sole argument is that FMCC failed to carry its burden to show that it has "at least a reasonable likelihood of success at trial by establishing a prima facie case." *Id.* Specifically, Appellants contend that the trial court erred in concluding that Sperro and Fenner intentionally induced the breach of the Installment Contracts between Borrowers and FMCC or proceeded with reckless disregard of the contractual relationship between Borrowers and FMCC.[10] Appellants implicitly challenge the trial court's conclusion that Sperro and Fenner had or should have had general knowledge of the existence of retail installment contracts between FMCC and Borrowers and the general provisions therein.

[29] Appellants recognize that, pursuant to the Installment Contracts, the Borrowers agreed to keep the Vehicles free from the claims of others and not to transfer any interest in the Vehicles without FMCC's written permission. Appellants concede that the TSAAs, by their very terms, violate the Borrowers' Installment Contracts. Appellants also acknowledge that the Installment Contracts give FMCC the right to take possession of the Vehicle upon the Borrower's default of any promise. However, they contend that the trial court's conclusion that

---

[10] The conclusion addresses an element of FMCC's action for tortious interference with a contract. Tortious interference with a contractual relationship consists of the following elements: (1) the existence of a valid and enforceable contract; (2) the defendants' knowledge of the existence of the contract; (3) the defendants' intentional inducement of breach of the contract; (4) the absence of justification; and (5) resultant damages. *Sheets v. Birky*, 54 N.E.3d 1064, 1072 (Ind. Ct. App. 2016).

Sperro and Fenner intentionally or recklessly induced the Borrowers to default on their Installment Contracts is speculative. They argue that Fenner testified that he never personally financed a vehicle and that none of the Borrowers testified at the hearing regarding why they entered into a TSAA with Sperro.

[30] We observe that Appellants do not challenge the trial court's finding that Fenner worked in the repossession business for twenty years. Also, Sperro's business was to transport and store collateral, and therefore Fenner had to know that all the vehicles surrendered to Sperro pursuant to the TSAAs have been financed and are subject to the liens. Fenner's business experience supports the trial court's conclusions that he had or should have had general knowledge that the Borrowers purchased the Vehicles pursuant to retail installment contracts and the provisions generally included therein. Accordingly, the trial court did not err in concluding that Sperro and Fenner intentionally induced the breach of the Installment Contracts between the Borrowers and FMCC or proceeded with reckless disregard of the contractual relationship between the Borrowers and FMCC.[11] Therefore, we affirm the trial court in all respects.

---

[11] Appellants also argue that the trial court erred in concluding that FMCC did not abandon the Vehicles. They argue that they reasonably believed that FMCC abandoned the Vehicles because FMCC had previously recovered six other vehicles by paying the towing and storage fees. However, Appellants do not explain how abandonment is relevant to the trial court's decisions to grant prejudgment possession or a preliminary injunction. FMCC suggests that "Sperro asserts that FMCC abandoned the Vehicles as the sole 'good faith' justification why it should not be held liable for [civil] conversion." Appellee's Br. at 35. FMCC correctly states that "no mens rea is required and good faith is not a defense in a civil conversion action." *Id*. at 34 (citing *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010)). Therefore, we conclude that Appellants' abandonment argument is without merit.

Affirmed.

Kirsch, J., and May, J., concur.